H. W. LANTERMAN, Helen K. Lanterman, Donald L. Russell, Evelyn Russell, Duane M. Hummel, Mary A. Hummel, Walton S. Russell, Mary Jane Russell, R. H. Weinhandl, F. O. Weinhandl, Harlan Weir, and Rebecca Weir, Appellees,

v.

Byron L. DORGAN, North Dakota State Tax Commissioner, Appellant.

Civ. No. 9301.

Supreme Court of North Dakota.

June 3, 1977.

Rehearing Denied July 27, 1977.

Albert R. Hausauer, Sp. Asst. Atty. Gen., State Tax Dept., Bismarck, for appellant.

Vogel, Vogel, Brantner & Kelly, Fargo, for appellees; argued by C. Nicholas Vogel, Fargo.

PEDERSON, Justice.

This is an appeal by the Commissioner from a judgment of the district court of Burleigh County which, in effect, reversed and set aside an administrative decision in an income tax dispute. Material facts were stipulated. We affirm the judgment rendered by the trial court.

The taxpayers were shareholders in Mandan Creamery and Produce Company, a domestic corporation. It was incorporated in 1915 with a paid-in capital of $25,000. Periodically, the capital was increased by issuance of stock dividends and the transfer of earned surplus to capital. Cash dividends were also paid periodically to shareholders from current earnings. Earnings which were not otherwise distributed were transferred to the surplus account.

In 1972 the corporation decided to liquidate under a plan provided for in § 337 of the Internal Revenue Code. Under that plan the directors were authorized to sell the assets of the corporation and to distribute all cash or property to the shareholders as a distribution in liquidation, at which time the shareholders were to surrender for redemption and cancellation all of their shares of stock. Assets were sold and distribution was made accordingly, with no corporate taxable income under § 337 of the Internal Revenue Code, without regard to whether there was a profit realized from the sale of assets.

When the taxpayers filed individual federal income tax returns in 1972, the full distribution in liquidation received was reported. After deducting the cost basis of the stock surrendered, the net gain was reduced by fifty percent as a capital gain.

For their 1972 North Dakota individual income tax returns, the taxpayers deducted the remaining fifty percent, claiming that this was a domestic dividend, or income received from stock or interest in a corporation which is excluded under § 57–38–01.-2(1)(i), NDCC. All, except taxpayers Harlan and Rebecca Weir, treated their 1973 distribution in the same way for tax purposes.

When the State individual income tax returns were audited in the ordinary routine of the tax department (§ 57–38–38,

NDCC), additional taxes were assessed as a result of disallowance of the fifty percent deduction as a domestic dividend. The taxpayers objected, and an administrative hearing was held (§ 57–38–39, NDCC), resulting in a determination:

" * * * that the taxpayers not be allowed to deduct distributions in liquidation issued pursuant to Section 337 of the Internal Revenue Code on their 1972 and 1973 North Dakota income tax returns and that the determinations and assessments of additional income tax due as made by the Tax Commissioner for the taxable years 1972 and 1973 are correct * * *."

The taxpayers appealed to the district court (Chapter 28–32, NDCC), which ruled that the liquidating distributions constitute dividends as defined in § 57–38–01(12), NDCC, and are deductible pursuant to § 57–38–01.2(1)(i), NDCC. The matter was remanded to the Tax Commissioner for a determination of the amount of the distribution which represents untaxed capital gains on sales made by the corporation in 1972 and 1973, and for the pro rata reduction of the deductions taken by the individual taxpayers.

The parties neither briefed nor argued matters relating to the scope of and procedure on appeal from determinations of an administrative agency (§§ 28–32–19 and 28–32–21, NDCC). We accordingly assume that the trial court found only that the administrative determination was not in accordance with law and that we are reviewing only a question of law.

Pursuant to § 337 of the Internal Revenue Code a liquidating corporation may avoid taxes on gains from the sale of assets.

"Under these provisions [twelve-month liquidations provision], if a corporation adopts a plan of complete liquidation and within 12 months thereafter distributes all its assets in complete liquidation (less assets retained to pay claims), then *neither gain nor loss* is recognized to the corporation from the sale or exchange of its assets within the 12-month period." 33 Am.Jur.2d Federal Taxation, ¶ 2370, at 533.

Section 331 of the Internal Revenue Code permits the shareholder to be taxed on liquidation distributions as a capital gain.

"With a few exceptions, distributions in complete or partial liquidation give capital gain or loss to the shareholder, depending on whether the total amount distributed is more or less than his cost or other basis for his stock. The amount of the distribution is the sum of the cash plus the fair market value of any other property received by the shareholder in exchange for his stock." 33 Am.Jur.2d Federal Taxation, ¶ 2354, at 528.

By the amendment of Section 175 of the North Dakota Constitution in 1966, the legislative assembly was authorized to define income for state tax purposes or define the tax itself "by reference to any provision of the laws of the United States as the same may be or become effective at any time or from time to time, and may prescribe exceptions or modifications to any such provision." Consequently the 1967 Legislative Assembly did define taxable income for a starting point for State tax purposes, with reference to taxable income computed for Federal income tax purposes under the Internal Revenue Code. See Chapter 446, Session Laws 1967.

The Commissioner and the taxpayers agree that the result of the enactment of Chapter 446, S.L.1967, was to make the taxable income for Federal income tax purposes the starting point from which State taxable income is derived, by adjustments as may be provided by law (§ 57–38–01(20), NDCC). The Commissioner says that in "Federalizing", we also adopted IRS regulations and interpretations, except where State statutes dictate otherwise. The taxpayers argue that the State income tax laws are plain and unambiguous and there is no room for applying any vague rules of interpretation on the pretense of seeking the spirit of the law.

In writing about the Business Privilege Tax (also "Federalized", see § 57–38–66, NDCC) in 47 N.D.L.Rev. 371, 381 (1971), Garry A. Pearson said:

"The comments made above are not exhaustive; and they are intended to be a survey somewhat illustrative of the *problems of enacting a simple statute referenced to yet another statute,* i. e., one riddled with exceptions, with considerable special interest legislation and nontax objectives." [Emphasis added.]

Although it does not have application to this case, this Court commented on the "Federalization" of income tax in *Messner v. Dorgan,* 228 N.W.2d 311 (N.D.1975), to the effect that the "Federalization" does not detract from the validity of a separate "nonfederalized" area.

The pertinent State statutes are §§ 1, 2 and 3 of Chapter 446, S.L.1967, now codified as § 57–38–01.1, which reads:

"It is the intent of the legislative assembly to simplify the state income tax laws and to demonstrate that federal legislation is not necessary to deal with certain interstate tax problems, by adopting the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers and providing the necessary adjustments. thereto to substantially preserve and maintain existing exemptions and deductions.

"It is the further intent of the legislative assembly to eliminate double taxation of the earnings of small corporations by recognizing a subchapter S election when made for federal income tax purposes."

Section 57–38–01(20), which reads:

" 'Taxable income' in the case of individuals, estates, trusts and corporations shall mean the taxable income as computed for an individual, estate, trust or corporation for federal income tax purposes under the United States Internal Revenue Code of 1954, as amended, plus or minus such adjustments as may be provided by this act and chapter or other provisions of law;"

Section 57–38–01.2(1)(i), which reads:

"1. The taxable income of an individual, estate, or trust as computed pursuant to the provisions of the United States Internal Revenue Code of 1954 as amended, shall be:

\* \* \* \* \* \*

"i. Reduced by any dividends or income, up to a maximum of fifteen thousand dollars, received from stock or interest in any corporation and included in the adjusted gross income as computed for federal income tax purposes where the income of such corporation has been assessed and tax paid by the corporation under this chapter and such dividends or income was received by the taxpayer as income during the income year if such corporation has reported the name and address of each North Dakota resident owning stock and the amount of dividends or income paid each such person during the year, provided, that when only part of the income of any corporation shall have been assessed and corporation income tax paid thereon under this chapter, only a corresponding part of the dividends or income received therefrom and included in federal adjusted gross income shall be subtracted. The commissioner is hereby authorized to prescribe rules and regulations to implement this subdivision to avoid injustice to taxpayers, to prevent duplication of deductions, and to eliminate taxation of income not fairly and properly taxable under this chapter."

■ The Commissioner argues that unless these taxpayers are required to treat their income from the liquidation alike on both Federal and State returns, there will be income which escapes taxation and we will not fulfill the concept of the "Federalized" return. The statutes are clear and unambiguous—the Federal taxable income is the starting point for the preparation of the State income tax return. Thereafter, it is the privilege of the taxpayer to make those adjustments specifically prescribed. For comparable rulings involving questions of ambiguity of the language in the tax statute, see *Clapp v. Cass County,* 236 N.W.2d 850 (N.D.1975), and *In re Dilse,* 219 N.W.2d 195 (N.D.1974).

When we examine the perspicuity of § 57–38–01.2(1)(i), NDCC, we find that the reduction (from the starting point) includes not only dividends but any income received from stock *or* interest in any corporation. Additionally, we note that the reduction relates only to the funds received by the individual taxpayer upon which the corporation has paid income tax. When the corporation has paid income tax only on a part of the income (such as we have in this case), then only a corresponding part of the dividend or income received by the individual taxpayer shall be subtracted.

This is not a statute to be understood after a light skim through (nor are many other tax statutes). Any careful reader will find it clear and unambiguous until he reaches the last sentence, which states:

"The commissioner is hereby authorized to prescribe rules and regulations to implement this subdivision to avoid injustice to taxpayers, to prevent duplication of deductions, and to eliminate taxation of income not fairly and properly taxable under this chapter."

That could be interpreted only to authorize the Commissioner to adopt rules consistent with the statute to avoid injustice, prevent duplication of deductions, and exempt income which is not fairly and properly taxable.

This interpretation is in accord with what we said in *Medical Properties v. North Dakota Board of Pharm.*, 80 N.W.2d 87 (N.D. 1956), that the Legislature cannot delegate powers to an administrative agency to adopt rules which include substantive matter not included in the statute under which it is acting. It would be inconsistent with the statute for the Commissioner to adopt a rule (or for this Court to adopt an interpretation) which results in altering substantive rights granted by the statute. See also, *Clapp v. Cass County, supra,* where we said that interpretative regulations do not have the force of law, and § 57–38–56, NDCC, on powers of the Commissioner.

There were funds (accumulated surplus) received by the taxpayers in this case upon which the corporation had, over the years, paid corporate income tax, in addition to funds (profit on sale of assets) upon which the corporation had not paid corporate income tax. The statute specifies, in no uncertain terms, that "when only part of the income of any corporation shall have been assessed and corporation income tax paid thereon under this chapter, only a corresponding part of the dividends or income received therefrom and included in federal adjusted gross income shall be subtracted."

When these taxpayers subtracted all of the funds received instead of only a corresponding part, they failed to comply with the statutory directive. The trial court correctly remanded the case to the Commissioner for the purpose of redetermination and the elimination from the deduction claimed by the taxpayers of that corresponding part of the funds received which represented corporation income not taxed.

The judgment is affirmed. There will be no costs allowed on the appeal, a question of public interest being involved.

ERICKSTAD, C. J., and VOGEL and SAND, JJ., concur.

PAULSON, Judge (dissenting).

I dissent. I did not agree with the decision of the majority of the members of this court in *Messner v. Dorgan, supra,* 228 N.W.2d 311 [dissent at page 321] (N.D. 1975), and I do not agree with the majority opinion in the instant case. The majority of the members of this court continue to ignore the full impact of the so-called "Federalizing Act of 1967" (S.L.1967, Ch. 446), insofar as it applies to the North Dakota income tax law, Chapter 57–38 of the North Dakota Century Code.

The appellees are willing to accept federalizing of our State's income tax law to the extent that it relieves the corporation, Mandan Creamery & Produce Company, from the payment of a state corporate income tax upon the gain realized from the sale of its assets; and to the extent that it provides a starting point, federal taxable income, for the shareholders in filing their state individual income tax returns. It is at this

point that the shareholders desire the best of two worlds—by advantageously selecting portions of the North Dakota income tax law and applying them without regard to the remainder of the applicable statutory provisions of Chapter 57–38, N.D.C.C.

Section 57–38–01.2, N.D.C.C., including subdivision i of subsection 1 thereof, cannot be read alone; it must be read in conjunction with the remainder of the Act of which it was a part at the time it was enacted. That Act is S.B.No.393 (S.L.1967, Ch. 446), and it provides for the "federalizing" of income tax returns for individuals as well as corporations. S.B.No.393, *supra*, contained nine sections, including one section which set forth a declaration of legislative intent, and six sections which either created new law or amended the existing law. In addition, a number of existing statutory provisions of Chapter 57–38, N.D.C.C., were repealed. There can be no other conclusion drawn from an enactment of this magnitude but that the North Dakota Legislature intended a change in the direction of the taxing statutes of this State. That direction was toward the federalizing of this State's income tax law and the adoption of Federal interpretations thereof. This means that Chapter 57–38, N.D.C.C., must be read *in toto,* and in light of the federalizing provisions of S.B.No.393, *supra.*

In the instant case, while the income tax laws of North Dakota may have provided for a particular form of tax treatment during the period that Mandan Creamery & Produce Company was accumulating its surplus, this does not mean that such surplus inured to Mandan Creamery & Produce Company that same type of tax treatment after the statutory change in the income tax law decreed different treatment by virtue of the federalizing process.

The Legislature intended, by adopting the Federal definition of taxable income as a starting point for computing North Dakota income tax, that income defined for Federal income tax purposes as income from the sale of assets should be similarly defined as such for State tax purposes.

The Legislature enacted a law which in effect changed the method of tax treatment for corporation and individual income tax purposes (the gain resulting from the sale of assets by a corporation which had adopted a formal liquidation process). In not taxing such a gain to the corporation, the Legislature did not intend that the gain should be taxed to the shareholders. By adopting the Federal definition of taxable income, the Legislature provided a tax savings to both the corporation and the shareholders by taxing only the gain which resulted from the exchange of shares of stock for the monetary distribution received.

The North Dakota Supreme Court has previously determined that interpretations of the tax commissioner or any agency head should be given great weight. *Voss v. Gray,* 70 N.D. 727, 298 N.W. 1 (1941). The arguments which the tax commissioner has advanced in the instant case, as well as in *Messner v. Dorgan, supra,* demonstrate that the tax commissioner's interpretations were practical in construction and dealt fairly with the issue involved. The majority of the court, by holding that the tax commissioner has adopted a ruling that alters substantive rights, indicates that the majority is ignoring the legislative intent expressed in S.B.No.393, *supra* and the majority, instead, is substituting its conclusion that one sentence in a paragraph, standing alone, will preserve for a taxpayer whatever alternative provision of the income tax law will benefit him.

The majority, in remanding the case to the tax commissioner, is stating that that part of the distribution received by a shareholder which represents his proportionate share of the gain resulting from the sale of corporate assets should be taxed to him at the maximum rates applicable to his particular situation, which could be 10 percent instead of the 6 percent maximum which the corporation would be taxed. No capital gain provisions are applicable. That part of the distribution which is in excess of the shareholder's portion of the capital gains is tax exempt for State income tax purposes. The real irony of the majority's decision now becomes evident.

Reference has been made in the majority opinion to a subsequent amendment of subdivision i of subsection 1 of § 57–38–01.2, N.D.C.C., which limits domestic dividend deduction privileges to the first $15,000 received. Because this amendment is effective for years subsequent to the years presently in question, such amendment does not affect the appellees in this case. However, after July 1, 1975, the taxpayers affected will find themselves paying income tax at individual rates which are higher than the corporate tax on their share of gains resulting from the sale of corporate assets in a liquidating situation and they will then find themselves paying tax on any excess distribution which exceeds the $15,000 limitation. In future litigation, North Dakota will find the tax commissioner citing the decision in this case as supportive of his additional assessments, and the taxpayers will be urging the "federalizing" concept in that S.B. No.393, *supra,* should be read in its entirety.

Past legislative action clearly demonstrates that State income tax laws have been and continue to be federalized. The passage of S.B.No.393, *supra,* in 1967 has been followed by subsequent enactments of updating provisions whereby newly enacted Federal income tax provisions were incorporated into our State's income tax laws (S.L. 1969, Ch. 507; S.L.1973, Ch. 465, § 1; S.L. 1975, Ch. 529). During the 1975 legislative session, the North Dakota Legislature continued to be cognizant of probable future changes in the Federal income tax law (S.L. 1975, Ch. 534, § 2).

In the instant case, another cogent reason for dissenting from the majority opinion is that the assets of a dissolved corporation are not dividends, but are a proportionate share of such corporation's assets, and are based upon the individual shareholder's equity or proportionate ownership of the shares with reference to the total outstanding shares of the corporation.

There is a great distinction between a dividend received from an existing corporation and a distribution of assets in liquidation of a corporation which has determined to cease operations. In *Rossi v. Rex Consol-idated Mining Company,* 108 Wash. 296, 183 P. 120 (Wash.S.Ct.1919), the question was asked:

". . . are the assets of a dissolved corporation a dividend, where the board of directors authorized such assets to be distributed to its stockholders according to law?

In answer to this question, the Washington Court stated, 183 P. at page 121:

". . . we think there can be no doubt that the assets of a dissolved corporation are not distributed as dividends, as dividends are commonly known. [Citations omitted.] A dividend, when spoken of in reference to an existing corporation, and not one being closed up and dissolved, is understood as a fund which the corporation sets apart from its profits to be divided among its members."

Upon the trial of the *Rossi* case, *supra,* the Washington Court concluded that the proceeds of the sale of assets of a dissolved corporation were capital assets and not a dividend.

In the instant case, the Mandan Creamery & Produce Company, in addition, failed to comply with § 10–19–44(1), N.D.C.C., which states, in pertinent part:

"1. Dividends may be declared and paid in cash or property only out of the unreserved and unrestricted earned surplus of the corporation . . ."

This language, therefore, limits the application of § 57–38–01(12), N.D.C.C., because there must be a resolution passed by the board of directors of a corporation before a distribution of any kind can be made. In the instant case, the only actual declaration made by the corporation was a resolution adopted by the shareholders and directors on June 9, 1972, providing for a plan of complete liquidation and dissolution and which expressly provided that distributions of cash or tangible property were to be made to the shareholders in exchange solely for and in complete redemption and cancellation of and in payment for all the outstanding capital stock of the company. There is absolutely no provision in the reso-

lution, nor elsewhere in the minutes of the corporation, authorizing or providing for the payment of a dividend from current earnings or accumulated earnings in connection with the liquidation and dissolution of the corporation. Therefore, there was no distribution that could come within the meaning or intent of either § 10–19–44 or § 57–38–01(12), N.D.C.C. In conclusion, the majority in its opinion has failed to recognize the distinction between liquidation of assets, dividends, or income. I would reverse the judgment of the district court and affirm the decision of the State Tax Commissioner.