Virgil and Elizabeth HARDY, Petitioners and Appellants,

v.

STATE TAX COMMISSIONER, Respondent and Appellee.

Civ. No. 9345.

Supreme Court of North Dakota.

Oct. 7, 1977.

Rehearing Denied Oct. 26, 1977.

Fleck, Mather, Strutz & Mayer, Bismarck, for petitioners and appellants; argued by Gary R. Wolberg, Bismarck.

Albert R. Hausauer, Sp. Asst. Atty. Gen., State Tax Dept., Bismarck, for respondent and appellee.

ERICKSTAD, Chief Justice.

Virgil and Elizabeth Hardy, petitioners-appellants, appeal from the judgment of the Burleigh County District Court dated January 31, 1977, affirming the decision of the State Tax Commissioner, respondent-appellee, as entered on November 3, 1976, which determined that an August 5, 1976, income tax determination against the Hardys was correct.

The sole issue on appeal is whether the State of North Dakota may tax the income earned by an individual in another state which was earned prior to the date the individual became a resident of the State of North Dakota if such income was received

by the individual after the individual became a resident of North Dakota.

The facts in this case are not in dispute. In August of 1970, Virgil and Elizabeth Hardy and their family moved from North Dakota to Texas and became residents of that state. This move was made so that Mr. Hardy could supervise a seawall project near Port Arthur, Texas, for his employer, General Construction Company. The Hardys remained in Texas until June 1972 when they moved back to North Dakota. The Hardys have been residents of North Dakota since they moved back in 1972. In 1974, Mr. Hardy received the sum of $10,000 which represented a bonus or incentive payment for work done on the Texas seawall project. This money was paid to Mr. Hardy because of his success in saving labor costs on the Texas project.

The Hardys, being cash basis taxpayers, reported the $10,000 as income on their 1974 Federal income tax return but did not report this money on their 1974 North Dakota individual income tax return. Texas has no individual income tax, thus no income tax report was made to the State of Texas. On August 5, 1976, the North Dakota Tax Commissioner assessed a tax on the $10,000 and the Hardys requested an administrative hearing on the matter pursuant to Section 28–32–04, N.D.C.C. The administrative hearing was held on October 14, 1976, and the tax commissioner issued his findings of fact, conclusions of law and decision on November 3, 1976, upholding the assessment of August 5. The Hardys then appealed from that decision to the district court on November 26, 1976, pursuant to Section 28–32–19, N.D.C.C. The district court affirmed the decision and determination of the tax commissioner on January 31, 1977. The Hardys appealed from the district court's judgment to this court pursuant to Section 28–32–21, N.D.C.C. Section 28–32–19, N.D.C.C., was amended by the 1977 S.L., Ch. 287, § 1, and Section 28–32–21, N.D.C.C., was amended by the 1977 S.L., Ch. 284, § 6, in particulars not relevant to this appeal.

In this case where there is no dispute as to the facts and no dispute as to the procedure followed, this court will affirm the judgment unless it finds that such judgment is not in accordance with the law or that it is in violation of the constitutional rights of the Hardys.

The Hardys, on appeal, raised two contentions. They assert firstly, that the statutes of the State of North Dakota, do not provide for taxation of such income, and secondly, that any such taxation is impermissible in that it violates the rights secured under the privileges and immunities clauses of both Article 4, Section 2, and the Fourteenth Amendment of the United States Constitution. The tax commissioner and the district court held that the $10,000 bonus was encompassed by the North Dakota tax statutes and that such tax was constitutional. We conclude that the decision of the tax commissioner and the judgment of the district court are in accordance with the law and that they are not in violation of the constitutional rights of the Hardys.

It is clear that the $10,000 income in this case is covered by the North Dakota tax statute, Chapter 57–38. Section 57–38–01.-1, N.D.C.C., states:

"It is the intent of the legislative assembly to simplify the state income tax laws and to demonstrate that federal legislation is not necessary to deal with certain interstate tax problems, by adopting the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers and providing the necessary adjustments thereto to substantially preserve and maintain existing exemptions and deductions."

This court has also discussed this point before and stated:

". . . The statutes are clear and unambiguous—the Federal taxable income is the starting point for the preparation of the State income tax return. Thereafter, it is the privilege of the taxpayer to make those adjustments specifically prescribed." *Lanterman v. Dorgan,* 255 N.W.2d 891, 894 (N.D.1977).

■ The Hardys, in this case, included the $10,000 in their 1974 Federal tax return. This they had to do because, as cash basis taxpayers, they had to report income in the year in which it was actually received. This is the general rule as established by *Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). Under Section 58–38–01.1, N.D.C.C., the Hardys, therefore, also had to include this income in their 1974 North Dakota tax return.

This requirement to include the $10,000 bonus is also mandated by Section 57–38–02, N.D.C.C., which reads:

"The tax imposed by this chapter shall be levied, collected, and paid annually with respect to the entire net income not hereinafter exempted received by every resident individual."

Finally, there is Section 57–38–04, N.D.C.C. It reads:

"The gross income of individuals shall be allocated and apportioned as follows:

\* \* \* \* \* \*

2. Except as provided in subsection 1 of this section:

a. Income received from personal or professional services performed by residents of this state, regardless of where such services are performed, and income received by residents of this state from intangible personal property shall be assigned to this state. . . ."
§ 57–38–04(2)(a), N.D.C.C.

This section also encompasses the $10,000 bonus received by Hardy for services performed outside the state.

The Hardys contend, however, that Section 57–38–04(2)(a), N.D.C.C., only applies to work performed while a resident and therefore does not apply to the $10,000 bonus earned for work performed while Hardy was a resident of Texas. Such an interpretation would be inconsistent with Section 57–38–01.1 and Section 57–38–02, N.D.C.C.

■ This court said in *Messner v. Dorgan*, 228 N.W.2d 311, 319 (N.D.1975):

"It is our duty to reconcile the provisions of law relating to the same subject matter if we can, and particularly is this true as to statutes adopted at the same legislative session."

To reconcile the statutes, Section 57–38–04(2)(a), N.D.C.C., is interpreted by this court to include services performed outside of the state, whether that person was or was not a resident at that time as long as he was a resident when he received the income.

■ Furthermore, there is no provision in Chapter 57–38, N.D.C.C., which would allow for the reduction of the 1974 Federal taxable income by subtracting the $10,000 bonus from it. The Hardys point to Section 57–38–01.2(1)(b), N.D.C.C., which they claim allows a reduction. That section states:

"1. The taxable income of an individual, estate or trust as computed pursuant to the provisions of the United States Internal Revenue Code of 1954, as amended, shall be:

b. Reduced by any other income included in the taxable income, or in the computation thereof, on the federal return which is exempt from taxation by this state because of the provisions of the constitution of this state or the United States."

Applying this section, if the $10,000 income earned by Mr. Hardy outside the state, though received while a resident of North Dakota, is to be exempted, it is necessary to show that such a tax is unconstitutional.

The United States Supreme Court has held that taxation of income received by a resident taxpayer for services performed outside of the state is constitutionally permissible. *New York ex rel. Cohn v. Graves,* 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937); *Lawrence v. State Tax Commission of Mississippi,* 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932). In *New York ex rel. Cohn v. Graves, supra* at 300 U.S. 312–13, 57 S.Ct. 467, 81 L.Ed. 670, the Court stated:

"That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized. Domicil itself affords a basis for such taxation. Enjoyment of the

privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from the responsibility for sharing the costs of government. . . . A tax measured by the net income of residents is an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits."

While the preceding cases do not involve the precise issue in this case, two state appellate courts have recently decided cases which deal with the precise issue raised on this appeal. Both of these cases held that income earned by a person for services performed outside of the state while a nonresident was taxable by the state when the income was received when he was a resident. *Rogers v. Chilivis,* 141 Ga.App. 407, 233 S.E.2d 451 (1977); *Evans v. Comptroller of Treasury, Income Tax Division,* 273 Md. 172, 328 A.2d 272 (1974). The Maryland court in particular discussed and upheld the constitutionality of such a tax.

The Hardys attempt to distinguish *Evans* on the basis that the Maryland Court of Appeals in *Evans* was concerned with only the equal protection clause of the Fourteenth Amendment, whereas the Hardys are stressing the privileges and immunities clauses of Article IV, Section 2, and the Fourteenth Amendment to the United States Constitution. We conclude that the privileges and immunities clauses of Article 4, Section 2, and the Fourteenth Amendment were not violated in this case by the State of North Dakota imposing an income tax on the $10,000 in question.

The Supreme Court in *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), in discussing the purpose of the privileges and immunities clause of Article 4, § 2, stated the following:

"The primary purpose of this clause, like the clauses between which it is located—those relating to full faith and credit and to interstate extradition of fugitives from justice—was to help fuse into one Nation a collection of independent, sovereign States. It was designed to insure to a citizen of State A who ventures into

State B the same privileges which the citizens of State B enjoy. For protection of such equality the citizen of State A was not to be restricted to the uncertain remedies afforded by diplomatic processes and official retaliation." 334 U.S. 395, 68 S.Ct. 1162, 92 L.Ed. 1471.

In this case, the Hardys, who were residents of North Dakota in 1974, were treated just like all the other residents of North Dakota. The Hardys, as all other residents of North Dakota, had to use the Federal taxable income as the starting point for figuring their North Dakota income tax. There was no violation of the privileges and immunities clauses of the United States Constitution and no infringement on the Hardys' right to travel. The fact that they had recently moved from Texas did not cause them to be taxed differently from other North Dakota residents.

From the above it is clear that the $10,000 bonus received by the Hardys in 1974 was encompassed by the North Dakota taxing statutes found in Chapter 57–38, N.D. C.C., and that imposing such a tax on that income is constitutionally permissible. Therefore, the judgment of the district court is affirmed.

VOGEL, PEDERSON, SAND and PAULSON, JJ., concur.