Zeno A. and Florence C. ERDLE, Roland D. Schultz, Ralph and Beatrice Messer, John and Adeline Erdle, and Wolfram and Betty Wald, Plaintiffs, Appellees, and Cross Appellants,

v.

Byron L. DORGAN, North Dakota State Tax Commissioner, Defendant, Appellant, and Cross Appellee.

Civ. No. 9812.

Supreme Court of North Dakota.

Dec. 19, 1980.

Rehearing Denied Jan. 8, 1981.

Pearson & Christensen, Grand Forks, and Morris Tschider, Bismarck, for plaintiffs, appellees, and cross appellants; argued by Garry A. Pearson.

Albert R. Hausauer, Sp. Asst. Atty. Gen., State Tax Dept., Bismarck, for defendant, appellant, and cross appellee; argued by Albert R. Hausauer and Leo Wilking, Sp. Asst. Attys. Gen.

ERICKSTAD, Chief Justice.

This is a tax case in which the defendant, the North Dakota Tax Commissioner (hereinafter Commissioner), assessed additional taxes for the year 1976 against the plaintiffs (hereinafter taxpayers). The taxpayers appealed to the Burleigh County District Court from the Commissioner's decision which the district court affirmed in part and reversed in part. The Commissioner has filed an appeal from that part of the district court's judgment reversing the Commissioner's decision and the taxpayers have filed a cross-appeal from that part of the district court's judgment affirming the Commissioner's decision.

## THE RMC, INC. ISSUE

During July, 1976, the taxpayers, shareholders of RMC, Inc., adopted a statement of intent to dissolve the corporation in accordance with the provisions of Section 337 of the Internal Revenue Code of 1954, as amended. The corporation distributed all of its assets in complete cancellation and redemption of all outstanding shares of stock of the corporation and the taxpayers reported the liquidation distribution on their 1976 federal income tax returns pursuant to Section 331 of the Internal Revenue Code. Thus, in reporting the distribution the taxpayers deducted their stock basis from the amount of distribution received and reported the balance as a capital gain or loss.

In filing state income tax returns for 1976, the taxpayers used federal taxable income as the starting point for computing their state income tax. Upon auditing the taxpayers' returns, the Commissioner determined that additional state income taxes were due because, in the Commissioner's view, the taxpayers should have reported, as ordinary income, the entire liquidation distribution received in excess of $15,000.00 by adjusting (increasing) federal taxable income on their state tax returns.

On February 10, 1978, the Commissioner issued Notices of Determination and Assessment of Individual Income Tax Due against the taxpayers for the year 1976. On March 6, 1978, the taxpayers filed protests and objections with the Commissioner and requested hearings in accordance with the Administrative Agencies Practice Act. On September 8, 1978, the taxpayers and the Commissioner entered a stipulation stating that an administrative hearing officer would issue findings of fact, conclusions of law, and a decision based upon stipulated facts and briefs. Consequently, no oral arguments were made or evidentiary material presented to the administrative hearing officer. On May 9, 1979, the Commissioner entered his decision holding that the amounts received by the taxpayers in liquidation of RMC, Inc., constituted dividends for state tax purposes and were not to be considered payments in exchange for shares of stock. The Commissioner determined that federal taxable income should be increased on the state tax return to reflect, as ordinary income, the entire liquidation distribution received by each taxpayer in excess of $15,000.00.

The taxpayers appealed to the Burleigh County District Court from the Commissioner's decision. On April 21, 1980, the district court entered a judgment reversing the Commissioner's determination. The Commissioner has now appealed to this Court from that part of the district court's judgment reversing the Commissioner's decision on this matter. The sole issue involved is whether or not the Commissioner's adjustment of the taxpayer's federal taxable income figure for state tax purposes

and the resulting additional assessment of taxes was in accordance with North Dakota law.

The Commissioner asserts that his application of the law in this case is mandated by this Court's decision in *Lanterman v. Dorgan*, 255 N.W.2d 891 (N.D.1977). We conclude that the Commissioner has fundamentally misinterpreted and misapplied our decision in *Lanterman*, and we affirm the district court's judgment reversing the Commissioner's decision.

For a better understanding of this issue and of the relevance of the *Lanterman* decision, it is necessary to set forth the following pertinent statutory provisions:

"*57–38–01. Definitions.* As used in this chapter, unless the context or subject matter otherwise requires:

\* \* \* \* \* \*

"20. 'Taxable income' in the case of individuals, estates, trusts and corporations shall mean the taxable income as computed for an individual, estate, trust or corporation for federal income tax purposes under the United States Internal Revenue Code of 1954, as amended, plus or minus such adjustments as may be provided by this act and chapter or other provisions of law." 57–38–01(20), N.D.C.C.

"*57–38–01.1. Declaration of legislative intent.*—It is the intent of the legislative assembly to simplify the state income tax laws and to demonstrate that federal legislation is not necessary to deal with certain interstate tax problems, by adopting the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers and providing the necessary adjustments thereto to substantially preserve and maintain existing exemptions and deductions.

"It is the further intent of the legislative assembly to eliminate double taxation of the earnings of small corporations by recognizing a subchapter S election when made for federal income tax purposes." 57–38–01.1, N.D.C.C.

"*57–38–01.2. Adjustments to taxable income for individuals and fiduciaries.*

"1. The taxable income of an individual, estate, or trust as computed pursuant to the provisions of the United States Internal Revenue Code of 1954, as amended, shall be:

\* \* \* \* \* \*

i. Reduced by any dividends or income, up to a maximum of fifteen thousand dollars, received from stock or interest in any corporation and included in the adjusted gross income as computed for federal income tax purposes where the income of such corporation has been assessed and tax paid by the corporation under this chapter and such dividends or income was received by the taxpayer as income during the income year if such corporation has reported the name and address of each North Dakota resident owning stock and the amount of dividends or income paid each such person during the year, provided, that when only part of the income of any corporation shall have been assessed and corporation income tax paid thereon under this chapter, only a corresponding part of the dividends or income received therefrom and included in federal adjusted gross income shall be subtracted. The commissioner is hereby authorized to prescribe rules and regulations to implement this subdivision to avoid injustice to taxpayers, to prevent duplication of deductions, and to eliminate taxation of income not fairly and properly taxable under this chapter." 57–38–01.2, N.D. C.C.

The factual situation in *Lanterman, supra*, is similar to that of the instant case. The taxpayers in *Lanterman* were shareholders of a domestic corporation which distributed all assets to its shareholders as a liquidation distribution in redemption and cancellation of all the shares of stock of the corporation. The *Lanterman* taxpayers, like the taxpayers in the instant case, reported the liquidation distribution on their federal income tax returns by deducting

their stock basis from the amount received and treating the balance as a capital gain or loss, and they used federal taxable income as the starting point for computation of their state income tax. However, unlike the taxpayers in the instant case, the *Lanterman* taxpayers adjusted the taxable income on their state returns by deducting that portion of the liquidation distribution which was included as taxable income on their federal returns (*i. e.* the amount received in excess of their stock basis less the long-term capital gain deduction). The *Lanterman* taxpayers asserted that such adjustment was allowed by Section 57–38–01.-2(1)(i), N.D.C.C., as a deduction of dividends or income received from stock or interest in a corporation. This Court upheld the *Lanterman* taxpayers' position that a liquidation distribution constituted dividends or income received from stock or interest in a corporation which, to the extent included in the adjusted gross income of the taxpayer as computed for federal income tax purposes, was deductible as an adjustment to taxable income for state purposes under Section 57–38–01.2(1)(i), N.D.C.C.[1]

The Commissioner asserts that because this Court, in *Lanterman, supra*, held that liquidation distributions qualify as "dividends or income . . . received from stock or interest in any corporation" deductible, up to $15,000.00, as an adjustment to taxable income by virtue of Section 57–38.01.2(1)(i), N.D.C.C., the taxpayers in the instant case must increase the federal income tax figure on their state tax returns to include as ordinary income gross liquidation distributions received in excess of $15,000.00. The Commissioner's position is that because a liquidation distribution qualifies as a deduction adjustment to income under Section 57–38–01.2(1)(i), N.D.C.C., such distribution must be given the same dividend or income identity for determining the federal taxable income figure to be used on the state tax return. In accord with that position, the

Commissioner asserts that on the taxpayers' state tax return, federal taxable income should be increased to include, as ordinary income, the entire liquidation distribution received by each taxpayer in excess of $15,-000.00 instead of being included as a capital gain or loss from the sale of stock, as such distribution was reported on each taxpayer's federal tax return. This is the identical position asserted by the Commissioner in *Lanterman, supra*, which this Court rejected:

> "The Commissioner argues that unless these taxpayers are required to treat their income from the liquidation alike on both Federal and State returns, there will be income which escapes taxation and we will not fulfill the concept of the 'Federalized' return. The statutes are clear and unambiguous—the Federal taxable income is the starting point for the preparation of the State income tax return. Thereafter, it is the privilege of the taxpayer to make those adjustments specifically prescribed." 255 N.W.2d at 894.

We reiterate our statement in *Lanterman, supra*, that the North Dakota statutes unambiguously state that federal taxable income is the starting point for the preparation of the state income tax return, and only those adjustments expressly provided by statute may be made to increase or decrease federal taxable income on the state tax return.

Subsection (i) of Section 57–38–01.-2(1), N.D.C.C., provides for a deduction from the federal taxable income figure for dividends or income received by a taxpayer from stock or interest in a corporation "up to a maximum of $15,000.00." If a taxpayer receives such dividends or income in an amount exceeding $15,000.00, the deduction is limited to $15,000.00, but there is no language in the statute providing for an increase to the federal taxable income figure to the extent the amounts received ex-

---

1. We note, although not relevant to the disposition of the instant case, that in *Lanterman, supra*, this Court agreed with the district court that the deduction allowed the taxpayers under Section 57–38–01.2(1)(i), N.D.C.C., must be reduced by an amount of the liquidation distribution proportionate to corporate income upon which the corporation had not paid state income tax.

ceed $15,000.00. The Commissioner's attempt to make such an adjustment increase is not permitted by North Dakota law.

We are fully cognizant that our decision in *Lanterman, supra,* as well as our decision in the instant case, allows capital gain treatment of liquidation distributions for purposes of determining the federal taxable income figure to be used as a starting point in computing state taxes while allowing dividend or income treatment of such liquidation distributions in qualifying for a Section 57–38–01.2(1)(i) deduction. Our statutes mandate such treatment of liquidation distributions, and we find no inherent contradiction or inequity in the result.

Accordingly, we affirm that part of the district court's judgment which reverses the Commissioner's decision to assess additional taxes upon the taxpayers for 1976 with respect to their receipt of liquidation distributions from RMC, Inc.

## THE WISHEK STEEL AND MFG. CO. ISSUE

■ The Wishek Steel and Manufacturing Company (Wishek) was incorporated as a North Dakota corporation on August 31, 1969. The taxpayers in the instant case owned shares of Wishek stock which they sold during 1976, and the Commissioner asserts that the taxpayers owe additional state taxes with regard to the sale of their Wishek stock. The decision of the Commissioner to assess additional taxes, dated May 9, 1979, was appealed to the Burleigh County District Court by the taxpayers. In its judgment, dated April 21, 1980, the Burleigh County District Court affirmed the Commissioner's determination, and the taxpayers have filed a cross-appeal from that part of the district court's judgment which affirms the Commissioner's decision. We reverse the district court's decision on this matter.

For 1976, Wishek elected to be taxed as a Subchapter S corporation for federal income tax purposes. During that year, Wishek had undistributed earnings for which each shareholder paid his proportionate share of individual federal income tax-

es, and, pursuant to Section 1376 of the 1954 Internal Revenue Code, each taxpayer's stock basis was increased by the amount of undistributed earnings of the corporation upon which he paid federal individual income tax.

Each taxpayer, during 1976, sold his shares of stock in Wishek. For federal individual income tax purposes, each taxpayer reported a gain or loss from the sale of such stock determined by deducting his basis in the stock from the amount received. As noted previously, each taxpayer's basis in the stock had been stepped-up by the amount of corporate undistributed earnings upon which the taxpayer had paid federal income tax. Each taxpayer's reported gain or loss from the sale of the Wishek stock was correspondingly affected by the stepped-up basis.

On their North Dakota state individual income tax returns, the taxpayers used federal taxable income as the starting point for computation of their state income tax. The federal taxable income figure used by each taxpayer included the gain or loss, reported by the taxpayer from the sale of his Wishek stock, derived by deducting the taxpayer's stepped-up basis in the stock from the amount received. However, during 1976 Wishek elected, pursuant to Section 57–38–01.4(2), N.D.C.C., to be taxed for North Dakota state tax purposes as a regular corporation and not as a Subchapter S corporation. Consequently, the 1976 undistributed earnings of the corporation were subject to state corporate income taxes but were not taxed on the taxpayer's individual state income tax returns.

Upon auditing the taxpayer's state income tax returns, the Commissioner concluded that the taxpayers were not entitled, for state tax purposes, to use the stepped-up basis in determining the gain or loss to be realized on the sale of their Wishek stock. Accordingly, the Commissioner determined that each taxpayer must increase the federal taxable income figure used on the state tax return to reflect the disallowance of the stepped-up basis on the Wishek stock. The Commissioner concluded that

because the taxpayers were not subjected to state income tax on the undistributed earnings of the corporation a step-up of their stock basis was unwarranted.

The North Dakota tax statutes clearly provide that federal taxable income is the starting point for the computation of state income tax by all taxpayers. Section 57–38–01(20), N.D.C.C.; Section 57–38–01.1, N.D.C.C.; *Lanterman v. Dorgan*, 255 N.W.2d 891 (N.D.1977). An adjustment to the federal taxable income figure cannot be made on the state tax return unless such adjustment is expressly provided by statute. Section 57–38–01(20), N.D.C.C.; *see also, Hardy v. State Tax Commissioner*, 258 N.W.2d 249 (N.D.1977). Consequently, the ultimate question to be resolved with respect to this issue is whether or not our statutes provide for an adjustment to federal taxable income to reflect differential treatment of a taxpayer's stock basis in a corporation which elects Subchapter S treatment for federal tax purposes and regular tax treatment for state tax purposes. Upon reviewing our tax statutes, we have found no such provision, nor has the Commissioner directed us to any statutory language which would allow such an adjustment. Accordingly, we reverse that part of the district court's judgment which affirms the Commissioner's determination to assess additional taxes against the taxpayers with respect to their sale of Wishek stock.

In accordance with this opinion, the judgment of the district court is affirmed in part and is reversed in part.

SAND, PAULSON and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

If we were reviewing these issues for the first time, I might well agree with Justice Paulson's dissent in *Lanterman v. Dorgan*, 255 N.W.2d 891, 895 (N.D.1977). However, as the opinion by the Chief Justice notes, this court has previously reviewed these issues in *Lanterman* and *Hardy v. State Tax Commissioner*, 258 N.W.2d 249 (N.D.1977). Those opinions concluded that the North Dakota statutes require the Federal taxable income as the starting point for the preparation of the State income tax return and only those adjustments expressly provided by statute may be made to increase or decrease Federal taxable income on the State tax return.

We were told at oral argument by counsel for the Tax Commissioner that *Lanterman* and *Hardy* were incorrect decisions, that some legislators agreed those decisions were incorrect interpretations of the statute, and that it was the conclusion of the legislators and the tax department that no further legislation was necessary because the decisions were incorrect. These statements are not, of course, part of the record. However, such a conclusion is not a correct reflection of the law. The construction of a statute by the courts, supported by long acquiescence on the part of the Legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. See, e. g., *Skinner v. American State Bank*, 189 N.W.2d 665 (N.D.1971). Thus, if the interpretation placed upon statutes by this court is incorrect, the Legislature presumably would take action by the amendment of the statutes to correct that interpretation. Although the interpretation in *Lanterman* and *Hardy* may not be indicative of "long acquiescence on the part of the Legislature," we were also informed at oral argument that no bills addressing these issues were introduced into the 46th Legislative Assembly which convened in 1979—after the decisions in those cases had been announced for some time. If the argument of counsel for the Tax Commissioner that no legislative amendments were necessary is accepted, it appears that even if this case had not arisen for some period of years after *Lanterman* there still would have been no legislative proposals made to address these issues.

Because this court has previously determined these issues and because there was no legislative action to alter those decisions, I concur in the opinion written by the Chief Justice.