**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gene A. BENSON, Defendant and Appellant.**

**Crim. No. 1095.**

Supreme Court of North Dakota.

Oct. 28, 1985.

Gail H. Hagerty, States Attorney, Bismarck, and Robert W. Wirtz, argued, Asst. Atty. Gen., Office of State Tax Commissioner, Bismarck, for plaintiff and appellee.

Gene A. Benson, pro se.

LEVINE, Justice.

Gene A. Benson appeals from a county court judgment of conviction, upon a jury verdict, for failure to file proper income tax returns for 1982 and 1983 in violation of Section 57–38–45, N.D.C.C., a Class A misdemeanor.[1] We affirm.

Benson raises issues addressed to the right to representation by lay counsel, the right to a twelve-person jury, and the right of a wage earner not to pay state income taxes.

### I. Lay Counsel

At his initial appearance on September 27, 1984, Benson informed the court that he was financially able to hire an attorney and that it would take approximately four weeks for him to do so. On October 19, 1984, the court held a hearing for purposes of entering a plea. Benson informed the court that he had not yet retained counsel and that more than twenty-five attorneys had refused to represent him. Benson refused to enter a plea at that hearing and, pursuant to Rule 11(a), N.D.R.Crim.P., the court entered a plea of not guilty on his behalf.

At a subsequent hearing on Benson's pretrial motions, Benson appeared with Keith Anderson as his "counsel." Anderson, who informed the court that he was not a licensed attorney, was not permitted to represent Benson. Benson then informed the court that he was still attempting to employ an attorney, and the court

---

1. Section 57–38–45(3), N.D.C.C., provides as follows:

   "*57–38–45. Interest and penalties.*

   \*    \*    \*    \*    \*    \*

   "3. Any person including any officer or employee of any corporation or any member or employee of any partnership who, with intent to evade any requirement of this chapter, shall fail to pay any tax, or to make, sign, or verify any return, or to supply any informa-
   tion required by law, or under the provisions of this chapter, or who with like intent shall make, render, sign, or verify any false or fraudulent information, shall be liable to a penalty of not more than one thousand dollars to be recovered by the attorney general, in the name of the state, by action in any court of competent jurisdiction. Such person shall also be guilty of a class A misdemeanor."

delayed ruling on Benson's pretrial motions.

Benson appeared without counsel at trial on March 7, 1985, and the following dialogue took place:

"THE COURT: The record should indicate we are in chambers prior to jury selection in the case of State versus Gene Benson. The defendant, Gene Benson, is present proceeding pro se, without counsel.

"MR. BENSON: I have to object to that, sir. I'm absent without counsel, period. I've been denied counsel of my choice, and I'm standing on that, too.

"THE COURT: All right. So that the record is clear, you indicated at the time of the arraignment that you were intending to provide your own counsel in this case.

"MR. BENSON: I attempted that. You denied me my counsel of my choice, Your Honor, so I will stand on that.

"THE COURT: And the counsel of your choice was a non-licensed attorney; is that correct?

"MR. BENSON: He is from out of state. He's been counsel out there before as far as I know."

Benson contends that he was denied the right of assistance of counsel of his choice [2] because the court refused to permit Anderson to represent him. Benson relies on three United States Supreme Court decisions to support his argument. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

We do not believe those cases are controlling. In *Faretta, supra*, the United States Supreme Court held that a defendant has a constitutional right to represent himself and proceed without counsel when he voluntarily and intelligently elects to do so. In *Argersinger, supra*, the Supreme

Court held that, absent a knowing and intelligent waiver, an indigent defendant may not be imprisoned unless represented by counsel at trial. In *Burgett, supra*, a case involving a recidivist statute, the Supreme Court held that the records of a prior conviction raised a presumption that the defendant had been denied his right to counsel in that conviction and the admission of those records into evidence in a subsequent trial resulted in the defendant suffering from the deprivation of his right to counsel. Although these cases address a criminal defendant's constitutional rights regarding counsel, none stands for the proposition that a defendant has a constitutional right to be represented by a lay person.

■ However, Benson relies on a footnote in *Faretta*, 422 U.S. at 820, 95 S.Ct. at 2533, which indicates that it was not an uncommon practice for colonial defendants to receive "counsel" at trial by personal friends who had received no formal training in the law. However, that linguistic analysis has been repudiated by the courts that have considered the issue of whether the right to assistance of "counsel" includes the right to representation by a lay person, and it is well established that the Sixth Amendment does not afford an accused the right to be represented by a lay person. See, *e.g.*, *United States v. Gigax*, 605 F.2d 507 (10th Cir.1979); *United States v. Benson*, 592 F.2d 257 (5th Cir.1979); *United States v. Buttorff*, 572 F.2d 619 (8th Cir.1978), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978), *reh'g denied*, 439 U.S. 884, 99 S.Ct. 228, 58 L.Ed.2d 199 (1978); *United States v. Wilhelm*, 570 F.2d 461 (3rd Cir.1978); *United States v. Taylor*, 569 F.2d 448 (7th Cir. 1978), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). These cases also recognize that to permit a lay person to represent a criminal defendant would sanction the unauthorized practice of law which our statutes expressly prohibit.[3]

---

2. Benson does not contend that he was indigent or that the court should have appointed a licensed attorney to represent him at his own cost.

3. Section 27–11–01, N.D.C.C., provides as follows:

Our research has not revealed any jurisdiction which permits a lay person to represent a criminal defendant as a constitutional right.

■ We conclude, therefore, that the trial court properly refused to permit a lay person to represent Benson.

## II. Jury Size

Benson also contends that due process was violated by impanelling a six-person jury rather than a twelve-person jury. Benson relies upon *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), and Section 33–12–19, N.D.C.C., to support his argument.[4]

In *Thompson v. Utah, supra,* the United States Supreme Court stated that the jury referred to in the Sixth Amendment was a jury of twelve persons neither more, nor less. However, that statement was rejected in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), which held that a twelve-person jury is not a necessary ingredient of a trial by jury under the United States Constitution and that a state law permitting a six-person jury did not violate the defendant's Sixth Amendment rights as applied to the States through the Fourteenth Amendment. This decision leaves the question of the size of juries to the states and to Congress unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise size of a jury.

Article 1, § 13, N.D. Const., provides as follows:

> *"Section 13.* The right of trial by jury shall be secured to all, and remain inviolate. A person accused of a crime for which he may be confined for a period of more than one year has the right of trial by a jury of twelve. The legislative assembly may determine the size of the jury for all other cases, provided that the jury consists of at least six members. All verdicts must be unanimous."

Section 29–17–12, N.D.C.C., in effect at the time of trial,[5] provides, as follows:

> *"29–17–12. Number of jurors—How sworn.* In all felony cases when a jury is impaneled, a jury shall consist of twelve qualified jurors, and in all misdemeanor cases when a jury is impaneled, a jury shall consist of six qualified jurors unless any party makes a timely written demand for a jury of twelve. Jurors shall be sworn or affirmed well and truly to try and true deliverance make between the state of North Dakota and the defendant whom they shall have in charge, and a true verdict to give according to the evidence, and such verdict must be unanimous."

See also, Rule 23, N.D.R.Crim.P.

■ Our Constitution and the foregoing statute specifically authorize a six-person

---

*"27–11–01. Practicing law and serving on courts of record without certificate of admission and without payment of annual license fee prohibited—Penalty.* Except as otherwise provided by state law or supreme court rule, a person may not practice law, act as an attorney or counselor at law in this state, or commence, conduct, or defend in any court of record of this state, any action or proceeding in which he is not a party concerned, nor may a person be qualified to serve on a court of record unless he has:

1. Secured from the supreme court a certificate of admission to the bar of this state; and

2. Secured an annual license therefor from the state bar board.

"Any person who violates this section is guilty of a class A misdemeanor."

**4.** Section 33–12–19, N.D.C.C., was repealed in 1981 and is therefore not applicable.

**5.** Section 29–17–12, N.D.C.C., was amended in 1985, effective July 1, 1985, by S.L.1985, Ch. 346, § 2, and as amended provides as follows:

"*29–17–12. Number of jurors—How sworn.* In all felony and class A misdemeanor cases when a jury is impaneled, a jury shall consist of six qualified jurors unless the defendant makes a timely written demand for a jury of twelve. In all other misdemeanor cases when a jury is impaneled, a jury shall consist of six qualified jurors. Jurors shall be sworn or affirmed well and truly to try and true deliverance make between the state of North Dakota and the defendant whom they shall have in charge, and a true verdict to give according to the evidence, and such verdict must be unanimous."

jury in misdemeanor cases which is also permissible under the federal constitution as interpreted in *Williams v. Florida, supra.* Consequently, Benson's trial by a six-person jury did not deny him due process.

### III. Taxability of Wages

Benson contends that he was denied due process by the "absence of substantive jurisdiction of the trial court and misrepresentation of code applications in the jury instructions."

Benson's argument, as we understand it, is that his wages, earned in exchange for time and effort expended, represent no gain and are, therefore, not income subject to North Dakota's income tax laws. This argument is apparently derived from dicta in *Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920), that "income" must be a "gain."

Article X, § 3, N.D. Const., provides as follows:

"*Section 3.* No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied. Notwithstanding the foregoing or any other provisions of this constitution, the legislative assembly, in any law imposing a tax or taxes on, in respect to or measured by income, may define the income on, in respect to or by which such tax or taxes are imposed or measured or may define the tax itself by reference to any provision of the laws of the United States as the same may be or become effective at any time or from time to time, and may prescribe exceptions or modifications to any such provision."

Pursuant to this authority, Section 57–38–01(8), N.D.C.C., defines taxable income in the case of individuals as "the taxable income as computed for an individual, ... for federal income tax purposes under the

United States Internal Revenue Code of 1954, as amended, plus or minus such adjustments as may be provided by this act and chapter or other provisions of law." Federal taxable income is the starting point for the computation of an individual's state income tax. *Erdle v. Dorgan,* 300 N.W.2d 834 (N.D.1980). For federal income tax purposes, 26 U.S.C. § 61 defines gross income as all income from whatever source including compensation for services.

These provisions clearly provide that wages are taxable income under North Dakota's income tax laws. Furthermore, the federal courts that have considered this argument have universally held that wages in exchange for labor or services are subject to the income tax laws. See, *e.g., Hyslep v. United States,* 765 F.2d 1083 (11th Cir.1985); *United States v. Romero,* 640 F.2d 1014 (9th Cir.1981).

Benson also argues that Section 57–38–45, N.D.C.C., does not establish a requirement for filing income tax returns and does not refer to any other section which requires him to file an income tax return. Thus, Benson contends the complaint did not allege an offense, and the county court did not have jurisdiction to hear the case.

In this instance, the criminal complaint charged Benson with violating Sections 57–38–45 and 12.1–32–01(5), N.D.C.C.

Section 57–38–45(3), N.D.C.C., provides that "any person ... who, *with intent to evade any requirement of this chapter,* shall fail to pay any tax, or to make, sign, or verify any return, or to supply any information required by law, or under the provisions of this chapter ... shall be liable to a penalty of not more than one thousand dollars.... Such person shall also be guilty of a class A misdemeanor." [Emphasis added.]

Section 57–38–31(1), N.D.C.C.,[6] provides, in part, as follows:

---

6. In *State v. Nichols,* 66 N.D. 355, 265 N.W. 859 (1935), and *Dorgan v. Kouba,* 274 N.W.2d 167 (N.D.1978), we held that North Dakota's income tax law, and particularly Section 57–38–31, N.D.

C.C., was constitutional. The jury was correctly instructed on the requirements of Section 57–38–31, N.D.C.C.

"*57–38–31. Duty of individuals and fiduciaries to make return.*

"1. *Every resident individual,* every fiduciary for a resident individual, estate, or trust, *who is required by the provisions of the United States Internal Revenue Code of 1954, as amended, to file a federal income tax return, and every individual or fiduciary who receives income derived from sources in this state, shall file an income tax return with the state tax commissioner in such form as the commissioner may prescribe. ...*"
[Emphasis added.]

This section clearly requires every resident individual who is required to file a federal income tax return or who receives income from sources within the state, to file an income tax return with the state tax commissioner. This section meets the *any requirement of this chapter* [Chapter 57–38, N.D.C.C.] language as contemplated by Section 57–38–45(3), N.D.C.C., and provides an affirmative duty for individuals who meet its qualification to file a state income tax return. Whether or not Benson met these qualifications was a question for the jury to decide after being properly instructed. Benson has not called our attention to any erroneous jury instructions on the requirement for filing state income tax returns.

We conclude that Benson was not denied due process in this regard.

 Benson also contends that the state failed to prove that he acted with "willfulness" in the commission of the alleged offenses. We note that Section 57–38–45(3), N.D.C.C., requires that there be an *intent* to evade any requirement of Chapter 57–38, N.D.C.C., not that the act be done willfully. Chapter 57–38, N.D.C.C., does not define "intent," and the trial court instructed the jury on the definition of "intentionally" in Section 12.1–02–02(1)(a), N.D.C.C. Although Section 12.1–02–02, N.D.C.C., may be directly applicable only to offenses or crimes described in Title 12.1, N.D.C.C., *City of Dickinson v. Mueller,* 261 N.W.2d 787 (N.D.1977), it was an appropriate

source to look to in determining the definition of "intent." See *Lord v. Job Service North Dakota,* 343 N.W.2d 92 (N.D.1984). Nevertheless, we believe the trial court's instruction was more favorable to Benson than he may have been entitled. See *State v. Bilbrey,* 349 N.W.2d 1 (N.D.1984); *State v. Goetz,* 312 N.W.2d 1 (N.D.1981), *cert. denied,* 455 U.S. 924, 102 S.Ct. 1286, 71 L.Ed.2d 467 (1982).

In essence, Benson's argument on this issue is that there was insufficient evidence to support the jury verdict. We have reviewed the record and we conclude that there was substantial evidence to support the jury verdict. See *State v. Olson,* 372 N.W.2d 901 (N.D.1985).

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and GIERKE, JJ., concur.