M. CLAIR BARRINGER, HARRY W. KENDALL AND FREDERICK H. SHARP, PLAINTIFFS-APPELLANTS, v. ANTHONY P. MIELE AS SUPERINTENDENT OF ELECTIONS AND COMMISSIONER OF REGISTRATION OF ESSEX COUNTY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued December 11, 1950—Decided January 8, 1951.

*Mr. Ira D. Dorian* argued the cause for appellants (*Messrs. Furst & Kessler,* attorneys).

*Mr. G. Dixon Speakman* argued the cause for the respondent (*Mr. Lester E. Mahr,* attorney).

The opinion of the court was delivered by

CASE, J. This is an action in lieu of prerogative writ brought in the Superior Court, Law Division, Essex County, by M. Clair Barringer and Harry W. Kendall, veterans of World War I, and Frederick H. Sharp, a veteran of World War II, against Anthony P. Miele, Superintendent of Elections and Commissioner of Registration in Essex County, New Jersey, whose offices were merged by statute in 1940, *ch.* 165, *P. L.* 1940. The complaint alleged that plaintiffs

had been summarily dismissed contrary to the provisions of the Veterans' Tenure Act (*R. S.* 38:16–1) and sought reinstatement and compensatory remuneration until reinstatement. On defendant's motion the complaint was dismissed for failing to state a remediable claim. The appeal, taken to the Appellate Division, has been certified on our own motion.

Sharp was employed from January 16, 1934, to January 1, 1939, as an investigator and from January 1, 1939, to July 31, 1940, as clerk-investigator at which time his employment was terminated by the defendant; he was re-employed August 1, 1940, as a temporary clerk-investigator and continued to be employed as such until April 9, 1949, except for the period from August 31, 1943, to November 16, 1945, while he was serving in the armed forces. He was re-employed on April 16, 1949, as temporary clerk-investigator and continued until discharged, January 19, 1950. Barringer was employed on November 5, 1947, as a temporary clerk and continued until discharged on January 19, 1950. Kendall was employed by the Commissioner of Registration as temporary clerk on September 17, 1940, and continued until October 1, 1942. He was then employed by the Superintendent of Elections as a temporary clerk-investigator and continued until his discharge on January 19, 1950. It is conceded that none of the plaintiffs were hired for a fixed term. The records of the County of Essex show that they were all hired as temporary employees. None of them was appointed to an office or a position or even an employment in the sense that he was to fill a chair which had been set up by statute or by ordinance or by any other machinery. Plaintiffs were employees taken on under temporary employment because, in the judgment of the defendant, their assistance was necessary, at the time, and so long as they should be retained, toward the doing of the current volume of work. They did not have distinctive jobs with predecessors or successors.

 In 1923 the office of superintendent of elections was created for counties of the first class. (*Pamph. Laws* 1923,

*ch.* 9.) Unusual provisions of the statute indicated a legislative scheme quite outside the usual bureau set up for either state, county or municipal purposes. The statute provided (*sec.* 1) that the office of superintendent of elections should be filled by appointment of the Senate and General Assembly in joint meeting assembled and (*sec.* 2) that "each of said superintendents of elections may appoint a chief deputy, a clerk, a secretary and such other assistants as he may deem necessary to carry out the provisions of this act, and may remove the same whenever he deems it necessary so to do. Such persons when appointed by said superintendents of elections shall not be subject to any of the provisions of chapter 156 of the Laws of 1908 and the amendments thereto, but shall be in the unclassified service. Each of said superintendents of elections shall fix the salaries of the persons so appointed and said salaries certified to and approved under his hand shall be paid semimonthly by the county treasurer of the counties in which such persons are so engaged. All other necessary expenses incurred in carrying out the provisions of this act when certified to and approved by said superintendents of elections shall be paid by the county treasurer of the counties in which said superintendent of elections shall maintain his office." Those provisions have been retained substantially unchanged (*R. S.* 19:32–1 and 2). The Legislature obviously intended to, and did, place in the hands of the superintendent of elections large and unusual determinative powers, including the hiring and removal, and the fixing of the number of and the compensation of his assistants and the requisitioning of funds. *Sewell v. Hudson County*, 126 *N. J. L.* 186 (*Sup. Ct.* 1941). The Legislature may by the manner in which it establishes or reconstructs a public office and by the character of authority which it gives in the supervision thereof indicate a purpose to exclude the employees from the application of the Veterans' Tenure Act. *Di Angelo v. Keenen*, 112 *N. J. L.* 19 (*Sup. Ct.* 1933). As interpreted in *McCallion v. Allan*, 134 *N. J. L.* 322 (*Sup. Ct.* 1946), the statute operates to give the superintendent the power of removal of employees unrestrained by

the provisions of the Veterans' Tenure Act. Since the handing down of that decision, a large number of statutes, estimated at 65, affecting elections have been adopted; but the power of the superintendent of elections to hire and dismiss employees has not been changed and the language of the Veterans' Tenure Act has not been altered. In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. *Eckert v. New Jersey State Highway Department*, 1 *N. J.* 474 (1949). The construction of a statute by the courts, supported by long acquiescence on the part of the Legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. *State v. Moresh*, 122 *N. J. L.* 77 (*E. & A.* 1938). The content of the statute, the judicial expressions thereon and the acquiescence by the Legislature convince us that the court below correctly determined the issue as to the employees of the Superintendent of Elections.

██ The employee of the Commissioner of Registration is in somewhat different case. But the applicable statutory provisions (*R. S.* 19:31–2) are quite similar to those already studied:—"The commissioner of registration * * * shall have power to appoint temporarily such number of persons as in his or its judgment may be necessary in order to carry out the provisions of this title. Such persons when temporarily appointed shall not be subject to any of the provisions of Title 11, Civil Service, but shall be in the unclassified service." That scheme of *temporary* appointments has not been altered by subsequent legislation. The authority to make an appointment that is temporary carries with it the power to terminate the employment when the conditions which require the appointment have ceased. See also *ch.* 121, *P. L.* 1948, *p.* 833.

The judgment of the superintendent in cases under his appointment and of the commissioner in cases under his appointment control.

Further, the law is well settled that a public official may terminate the services of employees for reasons of economy. *Ziegler v. Hackensack,* 113 *N. J. L.* 215 (*Sup. Ct.* 1934); *Santucci v. Paterson,* 113 *N. J. L.* 192 (*Sup. Ct.* 1934); *Maxwell v. Wildwood,* 111 *N. J. L.* 181 (*Sup. Ct.* 1933); *Spears v. Board of Commissioners,* 10 *N. J. Misc.* 962 (*Sup. Ct.* 1932). The question was raised by defendant's motion to dismiss the complaint. The motion was accompanied by the affidavit of the defendant which, *inter alia,* averred that by reason of combining the two offices under one head numerous economies had been effected, but that after that combination had been accomplished the Legislature added many additional duties such as folding, addressing and mailing sample ballots, making a house-to-house canvass of the registry lists of the entire county to be completed every four years, and advertising all improperly registered voters; that in addition, for the convenience of the voters, affiant had been preparing and mailing out to each voter a certificate indicating that the voter was registered, which certificate also acted as an identification card, and which, if properly signed and mailed to the affiant's office, would act as a transfer to vote; that affiant had annually prepared and printed for the county clerk at each general election lists of the voters in each of the 576 election districts; that notwithstanding those added functions and the payment of the increased wages because of changing economic conditions, running into many thousands of dollars, the affiant had been able to keep his total expenditures down so that in 1949 they were over $2,000 less than the expenditures for both offices in 1940, and that this had been accomplished by the more efficient distribution of the work, the shifting of personnel, the adopting of new methods of the purchasing of supplies and materials, and the installation of modern mechanical equipment and devices and other measures of economy; that during 1948 and 1949 the deponent had purchased and installed mechanical equipment for handling voters' registrations and the like; that this equipment had proved successful in operation and had demonstrated that

further economies in the operation of the defendant's offices could be made by terminating unnecessary services, and that accordingly, during the month of January, for the purpose of effecting further economies, the defendant had terminated the services of twelve employees, of whom three were the plaintiffs. That affidavit constituted persuasive proof that the plaintiffs were dismissed for reasons of economy. Against that proof plaintiffs filed affidavits which merely gave a categorical denial; Sharp "denied his discharge within his knowledge was for reasons of economy;" Kendall and Barringer each "denied that the termination of his employment was due to reasons of economy."

It is not the function of a court, on motion to strike a pleading, to determine which of the parties is telling the truth on the facts of the case; nevertheless, the court may, if a pleading is conclusively proved to be false, strike it as sham. *Berger v. Interstate B. & L. Association,* 121 *N. J. L.* 507 (*E. & A.* 1938). The categorical denial of economy as a ground of dismissal without any explanation or statement of other motive for the discharge does not stand up against the uncontradicted recital of a series of facts going to prove that substantial economies were effected. Defendant moved the dismissal of the complaint for failure to state a claim upon which relief could be granted, and named two grounds, first, that the statute referred to in the complaint (the Veterans' Tenure statute, upon which the action was based) did not apply to the employees of the Superintendent of Elections and the Commissioner of Registration of Essex County, and, second, that the employment of the plaintiffs was terminated by the defendant for the reasons of economy. In support of the latter proposition the affidavit above referred to, specific in its details, was admitted. Plaintiffs did not deny the specific statements of fact or the accomplishment of the savings. They contented themselves by asserting the unsupported conclusion that the discharges were not for reasons of economy. Thus it was conclusively demonstrated that marked economies had been effected in the past by the practice of discharging

unnecessary help and was being accomplished in the present instance by the discharge of plaintiffs. There was no countervailing proof that the defendant was motivated by any reason other than economy, or that the retention of plaintiffs was necessary to do the required work or that they were replaced by new employees. The court was not helpless to disregard plaintiffs' assertions as false conclusions designed to raise a sham issue. It properly granted the defendant's motion for the reasons stated in the notice.

We conclude that plaintiffs were not within the application of the Veterans' Tenure Act; and, in addition, the discharges of plaintiffs were for reasons of economy. The judgment below will be affirmed, without costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.