## STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM A. BUGLIONE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 1989—Decided May 12, 1989.

Before Judges J.H. COLEMAN and BAIME.

*Arthur M. Sellitto Jr.* argued the cause for appellant (*Roeber & Sellitto*, attorneys; Arthur M. Sellitto on the brief).

*Samuel Marzarella*, Assistant Prosecutor, argued the cause for respondent (*James W. Holzapfel*, Ocean County Prosecutor, attorney; *Samuel Marzarella* of counsel; *John Edward Coratti* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Following a fatal motor vehicle accident, defendant was charged with death by auto (*N.J.S.A.* 2C:11–5), driving while under the influence of alcohol (*N.J.S.A.* 39:4–50a), making an improper turn (*N.J.S.A.* 39:4–123(b)) and drinking underage in a public place (*N.J.S.A.* 2C:33–15). The Ocean County grand jury returned a no bill with respect to the charge of death by auto. Thereafter, defendant entered pleas of guilty to the charges of making an improper turn and drinking underage. Following a trial in the Lacey Township Municipal Court, defendant was found guilty of driving while intoxicated. After merging the improper left turn offense into the drunk driving conviction, the court imposed a 30–day sentence in the Ocean County Jail, a fine of $400 and a surcharge of $100. Defendant's driving privileges were revoked for one year. Defendant was sentenced to a consecutive six-month sentence on the drinking underage conviction and was fined an additional $1,000. Following a trial *de novo* in the Superior Court, Law Division,

defendant was again convicted. The same sentences were imposed except the custodial terms were made to run concurrently.

On appeal, defendant asserts that (1) his driving while under the influence conviction constitutes a miscarriage of justice, (2) the court should have ordered a presentence report before imposing a custodial term on the disorderly persons violation of drinking underage, (3) *N.J.S.A.* 2C:33–15 does not authorize incarceration but rather only a monetary fine and (4) his custodial sentence under *N.J.S.A.* 2C:33–15 impinged upon his right to equal protection. We find no merit in any of the contentions advanced. *R.* 2:11–3(e)(2).

We need not recount the facts at length. It is undisputed that defendant, who was then 19 years old, consumed approximately three or four 12–ounce beers shortly before the accident. While attempting to make a left turn, defendant "cut the corner" and drove his vehicle into the oncoming lane of traffic. The victim, who was operating his motorcycle in the opposite direction, was struck "head on" and died shortly thereafter. The record discloses, and the trial court found, that defendant and his companions were "laughing and joking" while first aid was being administered to the victim. The investigating police officers testified that defendant's eyes were "red" and "bloodshot," he was "swaying" and appeared "distant" and he smelled of alcohol. Two subsequent breathalyzer tests gave readings of .07%.

■ Against this factual backdrop, we are entirely satisfied that the trial court's findings are supported by sufficient credible evidence present in the record. *State v. Johnson*, 42 *N.J.* 146, 162 (1964). We point out that the municipal court judge made specific findings concerning the credibility of the witnesses. We are obliged to give deference to those findings, because the judge was substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which we, as a reviewing court, cannot enjoy. *Id.* at 161. We

note that the breathalyzer readings played a very minor role in the trial. *See N.J.S.A.* 39:4–50.1(2). Although defendant challenges the accuracy of breathalyzer evidence, we are bound by the determination of our Supreme Court in *Romano v. Kimmelman,* 96 *N.J.* 66 (1984). *See State v. Downie,* 229 *N.J.Super.* 207, 213 (App.Div.1988). In any event, this evidence clearly did not influence the result ultimately reached by the trial court.

■ We find no abuse of the trial court's discretion in refusing to order a presentence report. Since defendant was not convicted of an indictable offense, it was not incumbent upon the trial court to order a presentence investigation. *See N.J.S.A.* 2C:44–6; *R.* 7:4–6(a). The record reflects that the court was familiar with defendant's history of alcohol abuse. At oral argument, defense counsel was unable to point to anything helpful which would have been revealed had a presentence report been prepared. Under these circumstances, we discern no sound basis to disturb the trial court's discretionary decision. *State v. Alvarado,* 51 *N.J.* 375, 376 (1968).

■ We are also unpersuaded by defendant's argument that *N.J.S.A.* 2C:33–15, which prohibits drinking underage, does not authorize imposition of a custodial sentence. The operative statute provides that an offender "is guilty of a disorderly persons offense, and shall be fined not less than $100." *N.J.S.A.* 2C:33–15a. In subsection c, the statute states that "[i]n addition to the general penalty prescribed for a disorderly persons offense," the court may require participation in an alcohol education or treatment program "for a period not to exceed the maximum ... confinement prescribed by law for the offense for which the individual has been convicted." *N.J.S.A.* 2C:33–15c. In 1979, when *N.J.S.A.* 2C:33–15 was enacted, the legal drinking age was 18. *See N.J.S.A.* 9:17B–1. Also at the time of the adoption of the statute, a juvenile in need of supervision classification (JINS) was mandated where the offense with which the minor was charged was the violation of a

statute applicable only to juveniles. *See N.J.S.A.* 2A:4–45(d). One of the consequences of a JINS classification was the dispositional restraint precluding institutional commitment except to facilities for the care of the mentally ill, mental retardates or drug addicts. *See N.J.S.A.* 2A:4–62; *R.* 5:9–9. Based upon the statutory prohibition against placing a JINS in a custodial institution, we held in *State in the Interest of K.P.*, 167 *N.J.Super.* 290 (App.Div.1979), certif. den. 87 *N.J.* 394 (1981), that the sentence of imprisonment permitted under the predecessor statute, *N.J.S.A.* 2A:170–54.1, which authorized a penalty of up to 30 days in jail for drinking underage, was impliedly repealed by *N.J.S.A.* 2A:4–42 to –68. *Id.* at 295 n. 2. Relying heavily on that decision, defendant contends that the Legislature did not intend to authorize imposition of a custodial term when it enacted *N.J.S.A.* 2C:33–15.

We disagree. Of course, we acknowledge that the Legislature must be presumed to have been thoroughly conversant with its own enactments and, therefore, the prohibition against custodial restraint of juveniles under *N.J.S.A.* 2A:4–45, when it adopted *N.J.S.A.* 2C:33–15 and provided that violators were subject to punishment as disorderly persons. *See Quaremba v. Allan,* 67 *N.J.* 1, 14 (1975); *In re Keogh–Dwyer,* 45 *N.J.* 117, 120 (1965); *Barringer v. Miele,* 6 *N.J.* 139, 144 (1951). This much conceded, we find this to be too weak a reed to rest a conclusion that *N.J.S.A.* 2C:33–15 does not mean that which it plainly says. *N.J.S.A.* 2C:1–4b defines a disorderly persons offense as "an offense so designated in [the Code]." *N.J.S.A.* 2C:43–8 states that persons convicted of a disorderly persons offense may be sentenced to a maximum term of imprisonment of six months and may be assessed a maximum fine of $1,000. *N.J.S.A.* 2C:33–15 makes drinking underage a disorderly persons offense. We are thus convinced that a person between 18 years of age and 21 may be sentenced to a prison term of up to six months for drinking underage. With the statutory abrogation of the JINS classification, an offender under the age of 18 is considered a "delinquent" and is subject to a maximum term

of six months. *See N.J.S.A.* 2A:4A–23b; *N.J.S.A.* 2A:4A–44d(1)(g).

By its very terms, *N.J.S.A.* 2C:33–15 makes drinking underage a disorderly persons offense and subjects the offender to a prison term of up to six months and a maximum fine of $1,000. We read the phrase "and shall be fined not less than $100.00" as providing a mandatory minimum monetary penalty. These statutory penalties were obviously designed to curb one of the chief instrumentalities of human catastrophe, drinking underage. We construe the statute in a manner consonant with this essential purpose.

Our interpretation of *N.J.S.A.* 2C:33–15 as authorizing imposition of a custodial term is also supported by the legislative history. As we noted previously, the predecessor statute, *N.J. S.A.* 2A:170–54.1, provided that an offender was a "disorderly person," but that he or she could be imprisoned "for not more than 30 days" and "punished by a fine of not more than $50." These penalties were carried over in the recommendation of the New Jersey Criminal Law Revision Commission. *See The New Jersey Penal Code, Vol. I: Report and Penal Code, Final Report of the New Jersey Law Revision Commission,* at 119, 149 (1971). However, the Legislature rejected that proposal and increased the penalties. *See* Cannel, *Title 2C: New Jersey Code of Criminal Justice,* at 529 (1989). The objective was thus to enhance the punishment for drinking underage in order to deter those who might otherwise be inclined to violate the statute. *Ibid.* Our construction of the statute thus comports with the plain meaning of the language used and is consonant with the legislative design.

The remaining arguments advanced by defendant are wholly without substance and do not require further discussion. We are entirely satisfied that defendant was fairly convicted and properly sentenced.

Accordingly, the judgment of conviction is affirmed.