**FIRST INTERSTATE BANK OF FARGO, N.A., Plaintiff, Appellee and Cross–Appellant,**

v.

**Richard W. LARSON, Gayle L. Larson, Bernard M. Altenburg, Lois Ivers Altenburg, Thomas D. Nagle, Robert L. Sutton, Claudette Sutton, Alfred P. Krahn and Dorothy S. Krahn, Defendants, Appellants and Cross–Appellees.**

**Civ. No. 900386.**

Supreme Court of North Dakota.

Sept. 17, 1991.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff, appellee and cross-appellant; argued by Roger J. Minch.

Anderson & Bailly, Fargo, for defendants, appellants and cross-appellees; ar-

gued by Gregory L. Thompson. Appearance by Lowell Bottrell.

MESCHKE, Justice.

The nine general partners of Village Apartments, a North Dakota general partnership, appeal from a judgment enforcing their personal guaranties of the partnership's second mortgage debt with First Interstate Bank of Fargo, N.A. First Interstate cross-appeals from the denial of its motion to amend its complaint to seek recovery of losses from the resale of the mortgaged property. We overrule *Mandan Security Bank v. Heinsohn*, 320 N.W.2d 494 (N.D.1982), and hold that the anti-deficiency statutes apply to the general partners' personal guaranties of a general partnership's mortgage debt; however, we apply our decision prospectively. We therefore affirm the judgment.

On June 30, 1975, Gate City Savings and Loan Association loaned H & H Investment Company $260,000 to construct two apartment buildings in Wahpeton, North Dakota. The loan was secured by Short–Term Mortgage Redemption Act mortgages of $130,000 on each building. *See* NDCC Ch. 32–19.1. H & H later conveyed the two buildings to Village Apartments subject to the mortgages.

On April 30, 1982, First Interstate loaned Village Apartments $175,000. As security for the loan Village Apartments gave First Interstate a second mortgage on the two buildings. First Interstate and Village Apartments renewed the loan on January 31, 1983. On September 11, 1987, First Interstate and Village Apartments again renewed the loan and extended the mortgage. The loan renewal documents included a $90,000 unsecured promissory note, a $142,448.45 promissory note secured by the second mortgage, and continuing, unconditional guaranties of payment of the partnership's debt by the partners. All the partners signed the loan renewal agreement, the promissory notes, and the personal guaranties.

Village Apartments defaulted on its loans with Gate City and with First Interstate, and Gate City sued Village Apart-

ments to foreclose the 1975 mortgages. On October 18, 1988, foreclosure judgment was entered. At a sheriff's foreclosure sale on December 15, 1988, Gate City bought the two buildings for the amount of the partnership's debt with it and obtained Sheriff's Certificates of Sale on Foreclosure for the two buildings.

On January 15, 1989, First Interstate sued the partners on their personal guaranties. The partners answered and, on two separate occasions, moved to amend their answer to assert that the anti-deficiency statutes precluded First Interstate from enforcing the guaranties without first foreclosing its second mortgage. The trial court denied the partners' motions, concluding that existing law did not support that claim.

On June 15, 1989, First Interstate purchased the Sheriff's Certificates of Sale on Foreclosure from Gate City for $221,053.63 and in September 1989 sold the buildings for $197,044.54. First Interstate then moved to amend its complaint to seek recovery of $23,109.09, the difference between the price it paid Gate City and the price it received for the apartment buildings. The court denied First Interstate's motion. The partners moved to dismiss First Interstate's complaint, contending that, by taking the assignment from Gate City, First Interstate stood in Gate City's shoes and because Gate City bought the apartment buildings for the amount of the partnership's debt with it, First Interstate took the property in satisfaction of all mortgage indebtedness. The court denied the partners' motion and subsequently ordered judgment for $162,741.42 against the partners, jointly and severally, as the balance due on their personal guaranties. The partners appealed, and First Interstate cross-appealed.

The partners argue that the anti-deficiency statutes preclude First Interstate from enforcing the guaranties without first foreclosing its second mortgage, and that the trial court abused its discretion in denying their motions to amend their answer to raise that claim. Their argument depends on the continued validity of *Mandan Se-*

*curity Bank v. Heinsohn*, 320 N.W.2d 494 (N.D.1982). Our analysis of their argument requires a brief description of the anti-deficiency statutes and their application to personal guaranties of mortgage debts.

The development, purpose, and history of the anti-deficiency statutes and the procedures for foreclosing real estate mortgages have been described in *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D.1974). *See also East Grand Forks Federal Savings & Loan Ass'n v. Mueller*, 198 N.W.2d 124 (N.D.1972) [Teigen, J., dissenting]. NDCC Ch. 32–19 and 32–19.1 prescribe the procedures for foreclosing real estate mortgages and obtaining deficiency judgments.

 Under the anti-deficiency statutes when a lender takes a mortgage on real property as security for a promissory note, the lender foregoes the right to proceed directly against the mortgagor on the note and instead receives the added protection of an interest in the property. *Mischel v. Austin*, 374 N.W.2d 599 (N.D.1985); *H & F Hogs v. Huwe*, 368 N.W.2d 553 (N.D.1985). The Legislature has prohibited deficiency judgments for real estate mortgages given under the Short–Term Mortgage Redemption Act. NDCC 32–19.1–07.[1] For other real estate mortgages, NDCC 32–19–04, 32–19–06, and 32–19–07,[2] direct that a court

**1.** NDCC 32–19.1–01 defines the scope of the Short–Term Mortgage Redemption Act and says:

*Mortgage may provide for foreclosure under chapter.* The parties to a real estate mortgage upon property involving an area not to exceed forty acres [64.76 hectares] may provide in said mortgage that upon default in the conditions of the mortgage the mortgage may be foreclosed as provided in this chapter.

NDCC 32–19.1–07 says:

*No deficiency judgment allowed.*—When any mortgage has been foreclosed under this chapter, the mortgagee or any party claiming by, through, or under said mortgagee shall not be entitled to any judgment for deficiency.

**2.** NDCC 32–19–07 says, in part:

*Other suits prohibited.*

\* \* \* \* \* \*

Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage ... shall the mortgagee ... be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage ... foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage ... shall be entitled only to a foreclosure of the mortgage ... except as provided by sections 32–19–04 and 32–19–06.

NDCC 32–19–04 says:

*What complaint shall state.*—In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage.

NDCC 32–19–06 says, in part:

*What judgment must contain—Deficiency judgments and other suits prohibited in excess of amount by which debt exceeds fair value of mortgaged premises—Determination of fair value of mortgaged real property.*

\* \* \* \* \* \*

The court may not render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted after July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if the plaintiff has so indicated in the complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. The separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in the separate action, may render a deficiency judgment against the party or parties personally liable, but the deficiency judgment may not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due on the mortgaged debt and costs of sale, there is no presumption that the premises sold for

shall not render a deficiency judgment except under very limited circumstances in a separate action against the parties personally liable for that part of the debt, with recovery limited to the difference between the amount due and the fair value of the land.

In *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D.1974), we considered the applicability of the anti-deficiency statutes to a non-mortgagor debtor. In *Ihringer* a husband and wife executed a note but only the husband executed the mortgage as security for the note. The mortgagee did not foreclose on the mortgage, but sued the wife on the note. Based on the language of NDCC 32–19–06, authorizing an action for a deficiency judgment "against the party or parties personally liable for that part of the debt," we held that the anti-deficiency statutes applied to the non-mortgagor debtor and concluded that the mortgagee could:

(1) foreclose without asking for a deficiency judgment, or (2) foreclose, asking for a deficiency judgment in a separate action after the sale of the property, and obtain a judgment for only the difference between the mortgage debt plus costs and the fair value determined by a jury against both mortgagors and nonmortgagors personally liable on the note, or (3) sue on the note without foreclosure but with recovery limited to the difference between the amount due on the note plus

costs and the fair value of the property determined by a jury.

*Ihringer,* 217 N.W.2d at 864. *Ihringer* thus requires a mortgagee to comply with the anti-deficiency statutes when bringing an action against the parties personally liable for the debt.

In *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D.1980), we considered the interrelationship of personal guaranties of a mortgage debt of a corporation and the anti-deficiency statutes. There a bank and a corporation executed three promissory notes secured by real estate mortgages. Four individuals also personally guarantied payment of the corporation's debt. When the corporation defaulted, the bank brought a foreclosure action against it and also independently sued the individual guarantors on their personal guaranties. We concluded that the anti-deficiency statutes did not apply to the independent action against the individual guarantors because those statutes did not clearly cover guarantors and because the action was based on a separate and distinct contract of guaranty and not on an obligation imposed by the notes or the mortgages.

Later, in *Heinsohn,* 320 N.W.2d 494, we applied a similar analysis to guaranties of a partnership mortgage debt by four partners. A majority of this court held that the anti-deficiency statutes did not preclude a mortgagee from recovering on the partners' personal guaranties of a partnership's

their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises must first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment may be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by the jury to be less than the sum adjudged to be due and the costs of the action.... At that time and place the party or parties may offer evidence to show the fair value of the mortgaged premises even though they may not have otherwise appeared in the action for a deficiency judgment. Any deficiency judgment obtained must be enforced by execution as provided by law, except that no execution may be enforced after three years from the date of the rendition of the deficiency judgment. The mortgagee or ven-

dor or the successor in interest of either is not permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, if the mortgage or contract was made after July 1, 1951, to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed or canceled in excess of the amount by which the debt and the costs of the action exceed the fair value of the mortgaged premises. The fair value must be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage and such judgment must be enforced by execution as provided by law except that the execution may not be enforced after three years after the date of the rendition of the judgment.

mortgage debt. The majority concluded that the partners had changed the nature of their obligation on the partnership's debt from joint liability as a partner to joint and several liability as a guarantor. Relying on *Bank of Kirkwood Plaza*, the majority held that the partners' individual guaranties were valid, separate obligations to pay the partnership debt, and that recovery on the guaranties was not precluded by the anti-deficiency statutes because liability was predicated on the separate guaranties and not on the mortgage debt.

◼ Here, the partners of Village Apartments argue that *Heinsohn* should be overruled. They assert that because a partnership is an association of persons and not a separate legal entity, they were already jointly liable for the partnership's mortgage debt and their personal guaranties added nothing to their liability. They contend that the distinction made in *Heinsohn*, between partners' joint liability for a partnership's mortgage debt and partners' joint and several liability on their personal guaranties, is inappropriate to allow circumvention of the anti-deficiency statutes. Relying on *Hagan v. Havnvik*, 421 N.W.2d 56 (N.D.1988), and *First National Bank & Trust of Williston v. Ashton*, 436 N.W.2d 215 (N.D.1989), the partners argue that because they were already liable for the partnership debt, their "guaranties" were not a "promise to answer for the debt, default, or miscarriage of another person" under NDCC 22–01–01(1) and that the anti-deficiency statutes are applicable.

In *Hagan*, a vendee on a contract for deed also executed a personal guaranty of performance of the contract for deed. When the vendee defaulted, the vendor sued to foreclose the contract for deed and also sought to enforce the personal guaranty. Because the vendee was both the principal debtor and the guarantor of the contract for deed, we ruled that the vendee's guaranty was not separately enforceable because it was not "a promise to answer

for the debt, default, or miscarriage of another person" under NDCC 22–01–01(1). We thus concluded that the anti-deficiency statutes applicable to the vendor's action precluded a deficiency judgment in the foreclosure action.

In *Ashton*, three individuals executed a promissory note secured by a mortgage and simultaneously executed personal guaranties of the mortgage debt. Upon default, the mortgagee sued the individuals on their personal guaranties. We applied the rationale from *Hagan*, and concluded that the individuals had not executed "guaranties" under NDCC 22–01–01(1) because the signors were both principal debtors and guarantors. We concluded that the individuals were already jointly and severally liable for the debt pursuant to the promissory note and that the "guaranty" did not enlarge their obligation.[3] We thus held that the anti-deficiency statutes were applicable.

Using the same analysis as in *Hagan* and *Ashton* to analyze the nature of a partner's liability for a partnership debt, we now conclude that the distinction we relied upon in *Heinsohn* is inappropriate to preclude application of the anti-deficiency statutes to a general partner's personal guaranty of a general partnership's mortgage debt.

◼ A partnership is an association of persons. NDCC 45–05–05(1). For service of process, a partnership is not a legal entity, separate and distinct from its members. *501 DeMers, Inc. v. Fink*, 148 N.W.2d 820 (N.D.1967). Although any partner may enter into a separate obligation to perform a partnership debt, partners are jointly, not severally, liable for the debts and obligations of the partnership. NDCC 45–06–07(2). However, under a contract of guaranty, the guarantors' liability is both joint and several. *Heinsohn* was based on this distinction between those two types of liability. The distinction is illusory.

---

3. NDCC 22–01–12 says:
 *Limitations upon obligation of guarantor.*— The obligation of a guarantor must be neither larger in amount, nor in other respects more

burdensome, than that of the principal. If in its terms the obligation exceeds that of the principal, the obligation is reducible in proportion to the principal obligation.

In a "joint liability," the joint obligors have the right to insist that they be joined as co-defendants and sued together. *Williams v. Reed,* 113 Cal.App.2d 195, 248 P.2d 147 (1952); *Schram v. Perkins,* 38 F.Supp. 404 (E.D.Mich.1941); Black's Law Dictionary, p. 838 (6th ed. 1991). In a "joint and several liability," each co-obligor, individually, has the duty of performing the obligation, and the obligee can sue all or any one of them separately. *Swint v. Fountain,* 106 Ga.App. 509, 127 S.E.2d 381 (1962); *Schram v. Perkins;* Black's Law Dictionary, p. 837 (6th ed. 1991). Thus the distinction between "joint" and "joint and several" liability is said to be the separate obligation of obligors in joint and several liability that is not present in joint liability alone.

North Dakota statutes blur this distinction. Whenever suit is brought against defendants jointly indebted, a creditor may proceed against the defendant served and if the creditor receives a favorable judgment "it may be entered against all the defendants thus jointly indebted to the extent only that it may be enforced against the joint property of all and the separate property of the defendants served." NDCC 32–30–01(1); *Continental Supply Co. v. Syndicate Trust Co.,* 52 N.D. 209, 202 N.W. 404 (1924). This statute goes on to say that "[w]here all the defendants have been served, judgment may be taken against any of them severally, when the plaintiff would be entitled to judgment against any one or more of such defendants if the action had been against such defendants or any of them alone." NDCC 32–30–01(3). Thus, when all the parties jointly liable on an obligation are sued together, there is no real distinction between "joint" and "joint and several" liability.[4] We believe that this procedural trifle is inappropriate to override the Legislature's recognized public policy controlling deficiency judgments in real estate litigation. *See Borsheim v. Owan,* 467 N.W.2d 95 (N.D.1991); *Brunsoman v. Scarlett,* 465 N.W.2d 162 (N.D.1991); *First State Bank of New Rockford v. Anderson,* 452 N.W.2d 90 (N.D.1990). Substantively, a partner's guaranty of a partnership debt is not a separate obligation.

General partners who personally guaranty a general partnership's mortgage debt have not changed the nature of their obligation on the debt.[5] The partners are parties personally liable for the partnership's debt [*see First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857] and, pursuant to NDCC 22–01–01(1), the partners have not personally guarantied the debt of another. *First National Bank & Trust of Williston v. Ashton,* 436 N.W.2d 215; *Hagan v. Havnvik,* 421 N.W.2d 56. *Compare Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640.[6] We therefore conclude that when general partners personally guaranty a general partnership mortgage debt, the anti-deficiency statutes are applicable, and that the procedures for deficiency judgments outlined in *First State Bank of Cooperstown v. Ihringer* must be satisfied.

First Interstate nevertheless contends that, because of its contractual expectations, our decision must be applied prospectively. We agree.

In *Forster v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 501,

---

**4.** NDCC 9–01–08 also says:

> *"Joint obligation—Contribution.* A party to a joint obligation or to a joint and several obligation who satisfies more than his share of the claim against all obligors may require a proportionate contribution from all the parties joined with him."

**5.** This conclusion is buttressed by the requirement of NDCC 22–01–12 that the obligation of a guarantor cannot be more burdensome than that of the principal. In this context, if the difference between "joint" and "joint and several" liability creates a separate and distinct obligation, then a partners' obligation is made more burdensome in contravention of NDCC 22–01–12 whenever a general partner individually guaranties a general partnership's mortgage debt.

**6.** Because a corporation is a separate entity, our decision in *Bank of Kirkwood Plaza* remains unchanged. Moreover, our decision does not apply to limited partners' individual guaranties of a limited partnership's mortgage debt because limited partners are not liable for the obligations of a limited partnership. NDCC 45–10.1–22.

504 (N.D.1989), we considered a similar question:

In *Olson v. Dillerud*, 226 N.W.2d 363 (N.D.1975), this court noted a number of relevant considerations to be used in determining whether or not a court decision should be given prospective effect, and quoted from the United States Supreme Court opinion in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), as follows:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, ... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighted the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Dillerud*, 226 N.W.2d at 369.

See also *Metropolitan Life Insurance Co. v. Commissioner of Department of Insurance*, 373 N.W.2d 399 (N.D.1985). *Compare James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Applying those factors to this case, we conclude that our decision should be given prospective effect.

Our decision overrules clear past precedent upon which lenders have relied to structure their contractual relations. The law in effect when a contract is made becomes part of the contract. *Lillethun v. Tri–County Electric Cooperative, Inc.*, 152 N.W.2d 147 (N.D.1967). The rights and obligations of contracting parties cannot be altered by subsequent legislation or

judicial decision. *State v. Klein*, 63 N.D. 514, 249 N.W. 118 (1933). *See also First Federal Savings & Loan Association v. Haley*, 357 N.W.2d 492 (N.D.1984). In 1987 First Interstate and Village Apartments restructured their loan agreement to include the partners' personal guaranties of the partnership's mortgage debt. The law in *Heinsohn* became part of their contractual relationship. It would violate the parties' contractual obligations and expectations to retroactively apply our decision overruling clear past precedent. We conclude that our decision applies prospectively and therefore does not apply to these guaranties. Accordingly, we conclude that the trial court did not err in denying the partners' motions to amend their answer to raise the anti-deficiency statutes.

First Interstate argues that the trial court erred in denying its motion to amend its complaint to permit recovery of the $23,-109.09 loss it suffered on the resale of the apartments. The partners counter that the trial court erred in denying their motion to dismiss First Interstate's action because First Interstate took the property from Gate City in satisfaction of the partnership's debt with First Interstate.

When First Interstate purchased the Sheriff's Certificates from Gate City, it obtained Gate City's mortgage interest in the apartments. *See First National Bank of Minot v. MacDonald Construction Co.*, 137 N.W.2d 667 (N.D.1965). Although the partners are liable to First Interstate on their guaranties with First Interstate, the partners did not personally guaranty their mortgage debt with Gate City. First Interstate stepped into the shoes of Gate City for the partnership's debt with Gate City. Gate City's mortgage is governed by the Short–Term Mortgage Redemption Act which directs that "the mortgagee or any party claiming *by, through, or under said mortgagee* shall not be entitled to any judgment for deficiency." NDCC 32–19.1–07. [Emphasis added]. Here, First Interstate took the property "by, through, or under" Gate City. Allowing First Interstate to also recover the losses it incurred when it sold the apartments would be al-

lowing a deficiency judgment. We conclude that the trial court did not err in denying First Interstate's motion to amend its complaint. Because the partners are liable on their personal guaranties of the partnership's debt with First Interstate, we also conclude that the trial court did not err in denying the partners' motion to dismiss First Interstate's action.

The district court judgment is affirmed.

VANDE WALLE and GIERKE, JJ., concur.

PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

PEDERSON, Surrogate Judge, dissenting.

It is one of society's basic rules that anything borrowed ought to be returned. I understand what may have motivated the legislation to provide some additional protection for naive borrowers who may be manipulated by the beguiling tactics of some "evil" lender.

In *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640, 643 (N.D.1980), we justifiably said that "[w]e will not extend the scope of the anti-deficiency statutes beyond that which is clear from the statute." *Mandan Security Bank v. Heinsohn*, (N.D.1982), honored that principle.

Perhaps some of the rhetoric in *Heinsohn* does justify a tuneup or an overhaul, but by overruling it we could start the commercial credit system down an uncontrolled "slippery slope." Surely, future lenders will need to back off from extending credit based upon a conservative appraisal of pledged assets supplemented by someone's integrity. Most lenders are merely bankers or caretakers of money that is owned by depositors or investors and they are governed by the rule of the prudent person.

Even real estate can turn out to be a worthless hole in the ground as in *Borsheim v. Owan*, 467 N.W.2d 95 (N.D.1991).

ERICKSTAD, Chief Judge, respectfully dissents.

Although this writer, in *Lembke v. Unke*, 171 N.W.2d 837 (N.D.1969), and in two cases decided the year before that, *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968), and in *Melland v. Johanneson*, 160 N.W.2d 107 (N.D.1968), concluded that prior decisions of this Court must be overruled, notwithstanding the respect normally due precedent, I do not believe that it is proper to overrule *Mandan Sec. Bank v. Heinsohn*, 320 N.W.2d 494 (N.D.1982). Contrary to the compelling circumstances and the evolutionary growth of the law, over an extended period of time for the most part, which our Court discerned in *Lembke, Iverson*, and *Melland* justifying overruling precedent, such factors are obviously nonexistent in the instant case.

In *Heinsohn*, the majority of this Court, speaking through Justice Paulson, when considering the same issue involved in this case and after discussing the California decisions of *Union Bank v. Dorn*, 254 Cal. App.2d 157, 61 Cal.Rptr. 893 (1967), and *Riddle v. Lushing*, 203 Cal.App.2d 831, 21 Cal.Rptr. 902 (1962), which held in essence that liability, as a guarantor, adds nothing to the primary liability of a principal obligor, held to the contrary:

> "[A] partner who personally guaranties payment of a partnership debt has changed the nature of his obligation on the debt, and the anti-deficiency statute does not preclude recovery by the bank on the individual guaranty."

*Mandan Sec. Bank v. Heinsohn*, 320 N.W.2d at 497.

The following quotation from *Heinsohn* indicates our reasoning at length:

> "The first issue raised is whether or not the anti-deficiency statute contained in the Short–Term Mortgage Redemption Act precludes recovery against the individual partners on their guaranties of the partnership debt. The appellants argue that a partnership is not a separate legal entity and that the partners are therefore the primary obligors on the note, so that their individual guaranties add nothing to their primary liability on the note.

Thus, they argue, the anti-deficiency statute precludes recovery on the individual guaranties. In support of this argument, the appellants cite two California cases, *Union Bank v. Dorn*, 254 Cal. App.2d 157, 61 Cal.Rptr. 893 (1967), and *Riddle v. Lushing*, 203 Cal.App.2d 831, 21 Cal.Rptr. 902 (1962).

"In *Dorn* and *Riddle* the respective courts held that a guaranty of a partnership debt signed by a partner in his individual capacity adds nothing to his primary liability as a principal obligor, and therefore recovery on the guaranty is precluded by the anti-deficiency statute. In *Dorn, supra,* 61 Cal.Rptr. at 894, the court stated:

'... in the present case it clearly appears that the supposed guarantors against whom suit has been brought are nothing more than principal obligors under another name. It is settled that liability as a guarantor adds nothing to the primary liability of a principal obligor. (*Valinda Builders, Inc. v. Bissner*, 230 Cal.App.2d 106, 40 Cal. Rptr. 735) In our view, respondents, both as principal obligors and as supposed guarantors, are entitled to the full protection of Code of Civil Procedure, section 580d, just as the guarantors in *Riddle v. Lushing*, 203 Cal. App.2d 831, 834, 21 Cal.Rptr. 902, were entitled as primary obligors to the full benefits and protection of section 580b, the section which prohibits deficiency judgments on purchase money mortgages.'

"We disagree with the conclusions reached by the California courts in *Dorn* and *Riddle*....

"Although this Court has previously stated in dicta that a partnership is not a separate legal entity, *501 DeMers, Inc. v. Fink*, 148 N.W.2d 820, 824 (N.D.1967), the nature of a partner's liability on partnership debts is different than his individual liability on individual obligations. In *Eastern Metals Corp. v. Martin*, 191 F.Supp. 245, 249 (S.D.N.Y.1960), the United States District Court for the Southern District of New York stated:

'The liability of a partner for the debts and obligations of the partnership has been defined and explained in *Ruzicka v. Rager*, 305 N.Y. 191, 111 N.E.2d 878, 882, 39 A.L.R.2d 288, from which the following is quoted:

"To some degree the individual liability of a partner is not the ordinary individual liability of one who obligates himself as an individual. Rather, the individual liability of a partner is merely an incident of the partnership liability. Judge Pound writing for the court in *Hartigan v. Casualty Co. of America* (227 N.Y. 175, 178, 124 N.E. 789, 790, supra) phrased the conception clearly and concisely as follows: 'When a partnership is established, the liability of the individual partners is an incident of the partnership merely, not a separate and independent liability.' We think the *Hartigan* case and *Geitner v. United States Fidelity & Guar. Co.*, 251 N.Y. 205, 167 N.E. 222 [ (1929) ] point this up very clearly.

"The difference in the relationship of a partner as such and as an individual to creditors, *e.g.*, the unavailability of partnership assets for execution on individual claims and the priorities of firm and individual creditors upon insolvency, further illustrate the general principle that a person who holds membership in a partnership acts, serves and is obligated in two distinct and differing capacities (See Partnership Law, §§ 51, 71; Debtor and Creditor Law, Consol.Laws, c. 12, § 277.)"

'The liability of the partners for an obligation of the partnership, arising from a breach of contract by the partnership, is joint. That is the situation in the case at bar. Neither Shulman nor Martin entered into a separate obligation to perform the partnership contract made by Eastern with Martin Enterprises.'

"The nature of a partner's liability for partnership debts is set forth in § 45–06–07 of the North Dakota Century Code [§ 15, Uniform Partnership Act]:

'*45–06–07. Nature of partner's liability.*—All partners are liable:

1. Jointly and severally for everything chargeable to the partnership under sections 45–06–05 and 45–06–06. 2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.'

"In the case at bar, the partners have each entered into separate obligations to perform the partnership contract. The effect of these separate obligations is to make the partners' liability joint and several, rather than joint. The partners are jointly and severally liable on their individual guaranties, and this liability is distinct from their joint liability on the underlying partnership debt. The partners have incurred liability in two separate and distinct capacities and we do not agree with the California courts in *Dorn* and *Riddle* that a partner's liability on his individual guaranty 'adds nothing to the primary liability' of the partners.

"We therefore conclude that the guaranties of the individual partners are valid, separate obligations to pay the partnership debt, and recovery on the guaranties is not precluded by the anti-deficiency statute. The anti-deficiency provision in the Short–Term Mortgage Redemption Act is contained in § 32–19.1–07, N.D.C.C.:

'*32–19.1–07. No deficiency judgment allowed.*—When any mortgage has been foreclosed under this chapter, the mortgagee or any party claiming by, through, or under said mortgagee shall not be entitled to any judgment for deficiency.'

"In *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640, 643 (N.D.1980), we held that anti-deficiency statutes do not preclude recovery from a guarantor:

'The action in the instant case against the guarantors, on the other hand, is not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty. A contract of guaranty is defined as follows:

"The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and not merely an engagement jointly with the principal to do the thing.... [Citations omitted.] A liability such as this, although it may result in requiring a guarantor to pay the note, is not predicated upon 'the terms of the instrument,' but upon a contract entirely separate and distinct." *Northern State Bank v. Bellamy*, 19 N.D. 509, 125 N.W. 888, 890 (1910).

'See also § 22–01–01, NDCC.

'Thus, although the guarantors may be required to pay the notes in the instant case, the liability is not predicated on the notes or the mortgages, as in [*First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D.1974)], but on the separate contract of guaranty.'"

*Heinsohn*, 320 N.W.2d at 496–498.

Justice VandeWalle, in his dissent in *Heinsohn*, among other things, distinguished between an individual guaranteeing a partnership debt secured by a mortgage and an individual guaranteeing a corporate debt secured by a mortgage, and, in conclusion, adopted the rationale of the *Dorn* and *Riddle* decisions.

I quote, in part, from Justice Vande-Walle's dissent:

"In this instance the mortgagor is a partnership, not a corporation. Apparently the majority opinion concludes that Section 45–06–07(2), N.D.C.C., which provides that a partner may enter into a separate obligation to perform a partnership contract, is sufficient to differentiate between a person who signs a mortgage as a partner and executes a guaranty as an individual. I do not agree. The conclusion creates a difference too fine for me to accept. I do agree with the rationale of the decisions cited but not followed in the majority opinion, *i.e., Union Bank v. Dorn*, 254 Cal.App.2d 157, 61 Cal.Rptr. 893 (1967), and *Riddle v. Lushing*, 203 Cal.App.2d 831, 21 Cal.

Rptr. 902 (1962), that liability as a guarantor adds nothing to the primary obligation of a principal obligor."

*Heinsohn,* 320 N.W.2d at 502.

Justice Meschke, in writing for the majority of the Court today, apparently not only adopts the rationale of *Dorn* and *Riddle* and Justice VandeWalle's dissent in *Heinsohn,* all without specific reference thereto, but expands thereon by reference in footnotes three and five to our law relating to guarantors. The implication seems to be that an obligation of a guarantor cannot be larger, nor more burdensome, than that of the principal, and that if a guarantor is not protected by the anti-deficiency statute, his obligation becomes more burdensome than that of the principal, and, consequently, his obligation must be treated the same as the principal's obligation from the standpoint of deficiency judgments. I do not agree that the obligation, in the sense of section 22–01–12, N.D.C.C.,

has been made more burdensome, but if that is true, then it would seem to me that the majority opinion in this case authored by Justice Meschke would result in an overruling of not only *Mandan Security Bank v. Heinsohn,* 320 N.W.2d 494, but also of *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, as the obligation of an individual guaranteeing a corporate mortgage debt would likewise seem to become more burdensome than the obligation of the principal.

My view is that this issue was carefully reviewed in *Heinsohn* as recent as 1982 and that, as the Legislature has not acted in five subsequent legislative sessions to change the law as we construed it in *Heinsohn,* we should adhere to our opinion in *Heinsohn.* We should assume that the Legislature is cognizant of our interpretation of the law and that the Legislature is in agreement, otherwise it would have acted to change the law by now.[1] If we do

---

1. At least as early as 1967, this Court, in *Kline v. Landeis,* 147 N.W.2d 897, 902 (N.D.1967), in construing a statute, said:

 "The legislature, in failing to amend the statute in light of the court's construction, has acquiesced in that construction, and thus has indicated that the construction is in accord with legislative intent."

 In support thereof, we quoted from *Barringer v. Miele,* 6 N.J. 139, 77 A.2d 895, 897 (1951), quoting *Commissioner of Banking and Insurance v. Moresh,* 122 N.J.L. 77, 3 A.2d 638, 639 (1939), as follows:

 "The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent."

 *Kline,* 147 N.W.2d at 902.

 References were also made in *Kline* to decisions from Kansas, Nebraska, and Wisconsin.

 Since *Kline,* this principle of law has been applied in *Portland Credit Union v. Hauge,* 169 N.W.2d 106 (N.D.1969); *Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971); *Erdle v. Dorgan,* 300 N.W.2d 834 (N.D.1981); and *State v. Gefroh,* 458 N.W.2d 479 (N.D.1990).

 Justice VandeWalle's special concurrence in *Erdle,* 300 N.W.2d at 839, seems especially relevant:

 "Because this court has previously determined these issues and because there was no legislative action to alter those decisions, I concur in the opinion written by the Chief Justice."

 In 1987, the Fiftieth North Dakota Legislative Assembly rejected a proposed amendment to § 22–01–01, N.D.C.C., which would have in effect overruled this Court's holding in *Heinsohn.* House Bill 1566 would have changed § 22–01–01, N.D.C.C., in the following way:

 "1. A 'guaranty' ~~shall mean~~ means a promise to answer for the debt, default, or miscarriage of another person, except that a promise made by a partner to answer for an obligation secured by a mortgage on real property granted by the partnership does not create a separate individual liability of the partner."

 This provision was given a do not pass recommendation by the House Judiciary Committee by a 13 to 1 vote. The measure was later defeated on the floor by an 82 to 10 vote.

 In opposition to the 1987 bill, Jim Schlosser of the North Dakota League of Savings Institutions, said, "If you don't want institutions to make high percentage loans to partnerships, which they won't do without a personal guarantee, then pass this legislation." Harry Argue, Executive Director of the North Dakota Bankers Association, speaking in opposition to the bill, said "that result of passage of this bill would be that the amount of high percentage loans would be severely restricted and lenders would look that much more frequently to using the corporate type of arrangement. It has become necessary to look at all types of situations that may arise, realizing that a financial institution['s] first concern is the protection of its depositors['] money." *See* Hearings on H.B. 1566 before the House Judiciary Committee, Fiftieth Legislative Assembly of North Dakota (February 4, 1987).

not do so, the law, as adopted by the majority opinion, albeit to be applied prospectively, will have an immediate deleterious, if not a disastrous, effect upon the credit available to partnerships and possibly family corporations who are trying in desperate times to secure needed credit.

I think the opinions in *Mueller* and *Heinsohn* are as correct, just, and wise today as when they were decided, and, as we said therein, we should not extend the scope of the anti-deficiency statutes beyond that which is clear from the statutes.[2]

The Legislature has clearly demonstrated that it can and will act quickly in response to a construction of a statute by this Court when it believes that the construction is not consistent with its views of what the law means or what the law should mean. A few dramatic evidences of this are the actions of the Legislature, in effect, overruling *Colling v. Hjelle*, 125 N.W.2d 453 (N.D.1964) and *Stout v. N.D. Workmen's Compensation Bureau*, 236 N.W.2d 889 (N.D.1975).

The majority opinion in *Colling* held:
"In this case, at the time the hearing was held Maurice Colling had been acquitted of the charge for which he was placed under arrest. The officer had no warrant. The crime charged was one for which a lawful arrest could be made only if committed in the presence of the officer. The acquittal established that the crime charged had not been committed either in the presence of the officer or otherwise. That determination was made by a court. It could neither be reversed nor ignored in a hearing before

an administrative official who conducted the hearing, presented the evidence, questioned the witness, and made the quasi-judicial determination that resulted in the order revoking the operator's license. We agree with the trial court that the order of revocation issued by the State Highway Commissioner was properly reversed. The order of the district court is affirmed."
*Colling*, 125 N.W.2d at 459.

The dissent in *Colling* urged that the law should be as follows:
"Our general law of arrest, as it relates to a misdemeanor, permits a police officer, without a warrant, to arrest a person for a public offense committed in the officer's presence. Whether the arrest is legal should depend upon whether the officer had reasonable grounds to believe that the offense had been committed in his presence by the person arrested and should not depend upon whether the person was subsequently convicted or acquitted of the charge for which he was arrested. 'The reasonable grounds' or, as stated by some courts, 'the probable cause' which will justify an arrest for a misdemeanor without a warrant must be *a judgment based upon the officer's personal knowledge acquired at the time through the senses or inferences properly to be drawn from the testimony of the senses.*" [Emphasis added.]
*Colling*, 125 N.W.2d at 467.

In 1967 the Legislature, in Chapter 258 of the 1967 Session Laws, amended subsec-

To the best of our knowledge there were no other attempts to set aside this Court's holding in *Heinsohn*.
See also, 2A Sutherland Statutory Construction § 45.12 (4th ed.):
"[I]f the court interprets a statute and the legislature fails to take action to change that interpretation, it is presumed that the legislature has acquiesced in the court's interpretation."

2. In *Boettner v. Twin City Construction Company*, 214 N.W.2d 635, 640 (N.D.1974), this Court embraced the philosophy of the trial court when, in being asked to enlarge the scope of a statute, said:

"Any such extension should properly be the product of legislative enactment rather than judicial fiat. If a codicil as suggested is to be added to the statute, the legislature should be its author—not the courts."
See also *Heddon v. North Dakota Workmen's Comp. Bureau*, 189 N.W.2d 634, 636 (N.D.1971).
This Court has in the past consistently adhered to the principle that the anti-deficiency provisions should not be extended beyond that which is clear from the statute. See *United Bank of Bismarck v. Glatt*, 420 N.W.2d 743, 745 (N.D.1988), and *Brunsoman v. Scarlett*, 465 N.W.2d 162, 167 (N.D.1991).

tion 1 of section 29–06–15, N.D.C.C., to read:

"*29–06–15. Arrest without warrant.* A peace officer, without a warrant, may arrest a person:

1. For a public offense, committed or attempted in his presence; and for the purpose of this subsection a crime shall be deemed committed or attempted in his presence *when what the officer observes through his senses reasonably indicates to him that a crime was in fact committed or attempted* in his presence by the person arrested." [Emphasis added.]

This scenario and the amending legislation is a graphic demonstration of how the Legislature can react, and of how it does react, when it is convinced the Court has misconstrued a statute.

In *Stout v. N.D. Workmen's Compensation Bureau, supra,* our Court overruled the Workmen's Compensation Bureau which had denied a claim for death benefits resulting from a heart attack precipitated by work-connected, usual exertion as distinguished from unusual exertion. In so doing, we said:

"We affirm [the district court judgment], secondly, on the basis that the Bureau's distinction between 'unusual exertion' and 'usual exertion,' under which it makes awards in cases such as this where the exertion is 'unusual' but not where it is 'usual,' is an arbitrary distinction which we decline to follow. In *Suedel v. North Dakota Workmen's Compensation Bureau,* 218 N.W.2d 164, 175 (N.D.1974), the majority of this court said 'we leave for another day' the question of the survival of the unusual-exertion rule in this State, while the minority was of the opinion that the rule had not previously existed in this State. Be that as it may, we now state the rule to be that no such distinction is to be observed in this State. In so ruling, we join the majority of jurisdictions and become a part of the trend toward the so-called usual-exertion rule."

*Stout,* 236 N.W.2d at 892.

Our decision in *Grace v. North Dakota Workmen's Compensation Bureau,* 395 N.W.2d 576 (N.D.1986), discloses how the Legislature, in its 1977 session, reacted to our 1975 decision in *Stout* by amending the law to require the proof of "unusual stress." In *Grace,* we said:

"Section 65–05–05, N.D.C.C., provides for the payment of compensation and other benefits to employees who have 'been injured in the course of their employment.' The term 'injury' as used in Section 65–05–05, has been construed by this Court to mean 'compensable injury' as defined in Section 65–01–02(7), N.D.C.C. [Now section 65–01–02(8), N.D.C.C.] The relevant part of the definition that controls this case reads:

'If an injury is due to heart attack or stroke, such heart attack or stroke must be causally related to the worker's employment, with reasonable medical certainty, and must have been precipitated by unusual stress.' Section 65–01–02(7), N.D.C.C.

"Section 65–01–02(7) was amended by the North Dakota Legislative Assembly in 1977. The 1977 amendment reflects the legislative response to this Court's holding in *Stout v. North Dakota Workmen's Compensation Bureau,* 236 N.W.2d 889 (N.D.1975). In *Stout* we held that heart attacks occurring within the course of employment that were precipitated by *usual* exertion were compensable. 236 N.W.2d at 892.

"The legislative history of the amendment indicates that, after *Stout,* claims for heart attacks increased significantly. Legislative Council, Standing Committee Minutes, 1977, S.B. 2158. Mr. Richard J. Gross, former counsel for the Bureau, testified before committee that the number of heart attack claims rose 500 percent after *Stout.* To substantially reduce a projected 17 percent increase in premiums resulting from *Stout,* the legislature enacted Senate Bill 2158 in the 1977 legislative session requiring that a heart attack or stroke be precipitated by *unusual* stress in order to be compensable. See Chapter 579, Sec. 2, 1977, N.D.Sess.Laws.

"The 'usual exertion' rule of *Stout* is no longer a correct statement of law. As we have stated previously, unusual stress 'is now required by statute....' *Nelson v. North Dakota Workmen's Comp. Bureau,* 316 N.W.2d 790, 794 n. 2 (N.D.1982)."

*Grace,* 395 N.W.2d at 579–80.

Although there was no dissent in *Stout* to alert the Legislature as there was in *Colling,* legislative history following *Stout* discloses how quickly the Legislature can and will act if it deems it necessary and proper. Accordingly, I would leave to the Legislature the policy-making that is involved in determining the future evolution and growth of the law in this area involving deficiency judgments in situations where individuals have guaranteed the corporate or partnership mortgage debt.

Justice Meschke's citations to such recent cases as *Hagan v. Havnvik,* 421 N.W.2d 56 (N.D.1988), and *First National Bank & Trust of Williston v. Ashton,* 436 N.W.2d 215 (N.D.1989) demonstrate that our Court has not, even while recognizing the exceptions involved in *Mueller* and *Heinsohn,* ignored the need to protect debtors when justice and law so requires.

As a realist, I am cognizant that this dissent will likely remain a dissent and not convert other Justices to Justice Pederson's and my view. It is possible, however, in light of the effect that other dissents have had, that it could influence future legislation. In that respect, it seems that to encourage credit and assure integrity in conjunction with guarantees of corporate or partnership mortgaged debt, both the lender-guarantee and the borrower-guarantor could be required to sign a separate large print affidavit that the lender-guarantee has explained to the borrower-guarantor, and the borrower-guarantor understands that by signing the guaranty the borrower-guarantor has waived all rights under the anti-deficiency judgment law or laws. The Legislature could provide that, if such a document were signed before a notary public or anyone authorized by law to take acknowledgments under oath or affirmation, such a signing would consti-

tute a waiver of such rights. The effect would be to encourage the extension of maximum credit with the attendant risks being knowledgeably undertaken.